THE BRIDGEPORT HERALD CORPORATION ET AL. *v.* LOWER FAIRFIELD COUNTY NEWSDEALERS ASSOCIATION, INC.

SUPERIOR COURT   FAIRFIELD COUNTY AT BRIDGEPORT   FILE NO. 109581

112

Memorandum filed April 7, 1960

*Cohen, Schine & Wolf,* of Bridgeport, for the plaintiffs.

*Pelletreau & Grosby,* of Norwalk, for the defendant.

FITZGERALD, J. The within action was instituted by The Bridgeport Herald Corporation, a Connecticut corporation, by service of process on July 9, 1959. On July 14, 1959, the Standard News Company, Inc., also a Connecticut corporation, was given permission by Judge Roberts to intervene as an additional plaintiff, and on the following day filed its complaint as an intervening plaintiff. The action of the plaintiffs under their separate complaints is directed against the Lower Fairfield County Retail Newsdealers Association, Inc., also a Connecticut corporation, as party defendant. The plaintiffs seek to enjoin the defendant, its officers, executive committee, agents and member dealers from increasing the retail sales price of the newspaper owned and published by the first-named plaintiff from 20 cents

per copy to 25 cents per copy and from publishing notices in any form of such an increase. They also claim damages of $25,000. On August 28, 1959, following a hearing on the plaintiffs' motion for a temporary injunction, such was entered as on file by Judge Troland.

Upon a trial to the court on the question of the issuance of a permanent injunction with or without the assessment of damages, the following facts among others were made to appear: The first-named plaintiff, The Bridgeport Herald Corporation, is the owner and publisher of a weekly newspaper known as "The Bridgeport Herald," which is distributed and sold throughout Fairfield County and the entire state. The second-named plaintiff, The Standard News Company, Inc., is engaged in the business of selling and distributing "The Bridgeport Herald" to retail news dealers in Stamford, Greenwich, Norwalk and Westport, in lower Fairfield County. The defendant, Lower Fairfield County Retail Newsdealers Association, Inc., is composed of a number of the retail news dealers to whom the second-named plaintiff sells and distributes the Herald in the areas specified, and who in turn sell the Herald to members of the general public in those areas. As applied to this case and to the weekly newspaper in question, the first-named plaintiff occupies the status of publisher, the second-named plaintiff occupies the status of distributor, and the members of the defendant occupy the status of retail newsdealers. The area involved in this case is lower Fairfield County and not elsewhere in Connecticut.

Over a period of some years prior to the commencement of this litigation, the publisher of the Herald charged the distributor $13\frac{1}{2}$ cents per copy; the distributor in turn charged the retail dealers $16\frac{1}{2}$ cents per copy; and the latter charged the members of the public 20 cents per copy. This procedure

was based upon an oral working arrangement between the parties involved in this litigation. The retail dealers have become dissatisfied with this arrangement in so far as their gross profit of 3½ cents per copy is concerned. Directly stated, it is their position that they cannot afford to sell the paper to members of the public for less than 25 cents per copy, thus allowing them a gross profit of 8½ cents per copy, in view of other expenses incidental to their handling of the paper. It is the position of the publisher and of the distributors as plaintiffs that if the retail newsdealers who compose the defendant are permitted to sell the paper to the general public for 25 cents per copy, they will suffer irreparable damages from two standpoints: (1) the public will lose interest in buying the paper because of the increased price per copy and the revenue from sales will decrease; (2) as a result advertisers will curtail or forego the publishing of their advertisements, and additional income will be lost.

The complaint of the publisher alleges a conspiracy on the part of the defendant as the basis of its action and claims of relief. The complaint of the distributor alleges a breach of contract on the part of the defendant as the basis of its action and claims of relief. These basic claims are made for the purpose of securing a ruling to the effect that the plaintiffs as publisher and distributor respectively are entitled to fix, and limit to 20 cents per copy, the price at which the defendant through its members can sell the paper to the general public, and prohibit any increase in that charge by the defendant and its members.

Unless the plaintiffs can fortify their position by proof of a right conferred by a contract or of some right conferred by a statute, their case necessarily fails. *Dr. Miles Medical Co.* v. *John D. Park & Sons Co.,* 220 U.S. 373, 405 et seq.

As between the publisher and the distributor there was never a written contract of any kind; and the same is true as between the publisher and the retail dealers and the distributor and the retail dealers. The most that can be said is that the parties had a working arrangement one with the other which, among other things, followed a pattern of prices between publisher, distributor, retail dealers, and the charge to the general public by the latter. The duration of such arrangement in point of time was never fixed from a contractual standpoint. "Whatever right the [publisher or distributor] have to project [its] control beyond [its] own sales must depend, not upon an inherent power incident to production and original ownership, but upon agreement." *Dr. Miles Medical Co.* case, supra, 405.

The plaintiffs urge that custom and usage warrant a finding that by implication there was an agreement that the price of the paper per copy to the general public was to be controlled by them and therefore that the price set by them is binding on the defendant and its members. It is sufficient to say that the facts of the case do not warrant such a finding. And the plaintiffs cite no case which would justify the court in adopting their position in law or in equity. The problem at bar is not concerned with any written contract between the parties. Matters of custom and usage most frequently arise in litigation concerning written contracts. 55 Am. Jur. 287. Such cases as are cited by the plaintiffs on this point have no relation to the question here involved.

The view expressed by the Court of Chancery of New Jersey in *Newark Morning Ledger Co.* v. *Suburban Newsdealers' Assn.*, 9 N.J. Misc. 373, a case involving a comparable factual problem, can be paraphrased to cover the situation at bar in regard to the actual rights and privileges between the parties: "It is the right of the retail dealers to combine and

to refuse to handle the Herald except upon their terms, as it is the privilege of the publisher and distributor to refuse to sell to them except at their price. The refusal in either circumstance has a lawful purpose, and the courts cannot interfere. It is a case of the survival of the fittest." Compare the result obtained in *Fisher* v. *Jackson,* 142 Conn. 734, a case involving a contract of employment.

In view of the foregoing, any right of redress which the plaintiffs, or either of them, may have against the defendant in law or in equity, cannot be predicated upon breach of contract by the defendant and its members, with custom and usage an implied provision or stipulation thereof. And the same finding is required in regard to the allegation of conspiracy recited in the complaint of the first named plaintiff. The remaining question is whether the plaintiffs or either of them have a right of redress conferred by statute.

The short answer to this phase of the case is that the Fair Trade Act of Connecticut (General Statutes c. 735) and the federal McGuire Act of July 14, 1952 (66 Stat. 631, c. 745, §§ 1, 2, 15 U.S.C. § 45, 15 U.S.C.A. § 45, n.45) do not prohibit a retailer from charging a higher price for a commodity than a stipulated minimum price. Actually these two statutes are not directly referrable to the problem at bar because the court has not found the existence of a contract express or implied between the parties. They are cited solely to demonstrate that in the federal and state fields such statutes represent the extent of legislative enactments. No statute, federal or state, can be found to the advantage of the plaintiffs.

That the plaintiffs secured a temporary injunction on August 28, 1959, does not control the result on the issuance of a permanent injunction. "A temporary injunction is a preliminary order ... granted

at the outset or during the pendency of an action, forbidding the performance of the threatened acts described in the original complaint until the rights of the parties respecting them shall have been finally determined by the court." *Deming* v. *Bradstreet,* 85 Conn. 650, 659. "The principal purpose of such an injunction is to preserve the status quo until the rights of the parties can be finally determined after a hearing on the merits." *Olcott* v. *Pendleton,* 128 Conn. 292, 295.

The temporary injunction on file directed against the defendant, its officers, executive committee, agents and member dealers, is required to be, and is, dissolved. This action is based on a finding that the plaintiffs have not established a right to injunctive relief of a permanent nature, or to damages, within the purview of their respective complaints. This disposition makes academic the special defenses alleged by the defendant in its amended answer. Suffice it to say that if the subject of these defenses was required to be considered specifically, they would be held sustainable by the court. To resolve any of the issues raised by the plaintiffs in their favor would result in a denial of the constitutional guaranty of due process of law to which the defendant and its members are entitled.

Judgment may enter finding the issues for the defendant and denying the plaintiffs injunctive relief of a permanent nature and damages. An incidental effect of the judgment entered is the dissolution of the temporary injunction as on file. Costs to the defendant are limited to judgment fee and file. *So ordered.*