[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION AND TEMPORARY INJUNCTION
The plaintiffs in this action are the Town of Westport (the "Town"), its zoning enforcement officer, deputy fire marshal, building official, planning and zoning commission and the director of the Westport/Weston Health District. The defendant 157 Easton Road Corp. is the owner of premises in Westport known as 1365 Post Road East (the "Premises"). Arnold Kaye is the president and sole shareholder of the defendant corporation. Since July, 1993, Kaye has operated a restaurant at the Premises which is known as "Arnold's Diner." The plaintiffs contend that Arnold's Diner has been opened to the public and is operating without any of the necessary permits and is in violation of applicable zoning, fire safety, building and health codes and laws.
In addition to other relief, the plaintiffs seek temporary and permanent injunctions prohibiting the defendant from using the Premises for the restaurant until all the proper permits have been issued.
This case is before the court on the plaintiffs' application for a temporary injunction. Evidence on the application was taken on five days. The parties filed briefs and also presented oral argument to the court. The plaintiffs CT Page 2656 ask the court to enter a temporary injunction closing Arnold's Diner until such time as the defendant obtains all necessary permits and demonstrates compliance with all applicable codes and regulations. The defendant contends that the plaintiffs failed to establish their legal right to most of the relief sought and that with respect to the state fire safety code and the health code, the only serious violations were corrected by the defendant during the course of the hearing on the temporary injunction.
The principal purpose of temporary injunctions generally is to preserve the status quo until the rights of the parties can be determined after a full hearing on the merits. Olcott v. Pendleton, 128 Conn. 292, 295 (1941); Bridgeport Herald v. Lower Fairfield County Newsdealers Assn., Inc., 22 Conn. Sup. 111,116-117 (1960). The issuance of an injunction "is the exercise of an extraordinary power . . ." Scoville v. Ronalter, 162 Conn. 67,74 (1971). "An injunction is a harsh remedy." Leo Foundation v. Cabelus, 151 Conn. 655, 657 (1964).
The requirements generally for a temporary injunction are (1) the establishment of a legal right, which involves a likelihood of success on the merits and the lack of adequate remedy at law and (2) the imminence of substantial and irreparable injury to the plaintiff, considered with the weighing of the results on both parties. Conn. Assn. of Clinical Laboratories v. Conn. Blue Cross, Inc., 31 Conn. Sup. 110,113 (1973). In deciding whether to grant or dissolve a temporary injunction the court must balance the results which may be caused to one party or the other. Olcott v. Pendleton, supra at 295.
Insofar as the plaintiffs are claiming zoning violations by the defendant, this action is brought pursuant to General Statutes 8-12, which authorizes suit to prevent violations of the zoning laws. This court has previously ruled that temporary injunctions should not generally be issued in suits brought under General Statutes 8-12 where there is no showing of any particular or specific harm resulting from the alleged zoning violation. Kwiatkowski v. Johnson, 10 Conn. L. Rptr. No. 10, 311 (Dec. 20, 1993), Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV93-0307032S (October 26, 1993.) The several sound reasons for denying temporary injunctive relief absent proof of a specific harm are set forth in Kwiatkowski v. Johnson. The court refrains from entering a CT Page 2657 temporary injunction not because of any lack of desire to enforce the zoning laws, but rather because of the very fundamental difference under the law between a temporary injunction and a permanent injunction. In the zoning context, the court can order a permanent injunction without any evidence whatsoever of any irreparable harm. Johnson v. Murzyn, 1 Conn. App. 176,179-180 (1984). However, a temporary injunction — a non-appealable order granted based on a hearing rather than a full trial on the merits — must be based on a finding of irreparable harm.
The director of planning and zoning and the zoning enforcement officer for the town of Westport contend that the defendant has violated the Westport zoning regulations because it has undertaken renovations at the Premises which constitute a "change of use" as defined in the Westport zoning regulations. They claim that the defendant has opened Arnold's Diner after the change of use without filing a site plan to be reviewed by the Westport Planning and Zoning Commission (the "Commission"). They further contend that as a result of the renovations for Arnold's Diner, the Premises now exceed the lot coverage and floor area ratio ("FAR") requirements for the Premises which were established by virtue of a stipulated judgment between the Commission and the defendant. One of these plaintiffs testified that if the defendant is permitted to continue its restaurant use without zoning compliance, irreparable harm would result in that other property owners in Westport would be encouraged to resist zoning compliance.
The defendant contends that the plaintiffs failed to prove at the hearing that the work done at the Premises constituted a "change of use" as defined in the Westport zoning regulations. The court notes that the change of use definition in the Westport regulations is awkward and not easily understood. The plaintiffs' evidence with respect to the alleged change of use was conclusory and lacking detail, with the result that it is not clear to the court that the renovations constituted a change of use as defined in the Westport zoning regulations.
The defendant also contends that the FAR and lot coverage requirements established by agreement in the stipulated judgment are illegal and unenforceable under Bartsch v. Planning and Zoning Commission, 6 Conn. App. 686 (1986). The evidence presented at the hearing showed that it was Mr. Kaye who offered to establish the FAR and lot coverage ratios for the Premises by CT Page 2658 agreement, a clear factual distinction from the circumstances in Bartsch, where the commission imposed an illegal condition upon zone change without any agreement from the applicant.
The defendant also argues, however, that General Statutes8-12 does not provide a remedy to enforce a stipulated judgment. The statute provides a cause of action for enforcement of the zoning regulations, which are not the source here for the FAR and lot coverage requirements applicable to the Premises. The defendant's contention in this respect appears to have merit.
A temporary injunction should not be granted where the plaintiff's legal rights are not clear or are doubtful. Zoning Commission v. Leninski, 34 Conn. Sup. 66, 70 (1976); Cassidy v. Jenks, 14 Conn. Sup. 83, 84 (1946); Torrington Drive-In Corp. v. Local 402, A.F.L., 17 Conn. Sup. 416, 418 (1951). The court finds that a clear showing was not made by the plaintiffs that the work done at the Premises constituted a change of use nor that the terms of the stipulated judgment can be enforced by an action brought under Section 8-12. In addition, the court finds that the plaintiffs failed to show any specific irreparable harm which will result from the defendant's alleged zoning violations.
The Westport Building Official, another plaintiff in this action, testified that he observed the renovation work taking place at the Premises in the spring and early summer of 1993. The nature of the work was such that he concluded that a building permit was necessary. No building permit had been sought nor had any building permit for the Premises been issued. The Building Official therefore issued the defendant a "Stop Work" order. Although Kaye initially agreed to stop the work, he did not do so and completed the renovations and opened Arnold's Diner without a building permit and without a review of any of the construction plans to determine their compliance with the State Building Code. Because no plans were filed, the building official did not make the inspections normally required as construction progressed. He therefore cannot determine if the work was done properly or if the building is safe.
On cross-examination, the Building Official acknowledged that he did not see any work that did not comply with the State Building Code and that renovations done by Kaye in the past had been generally in conformity with the Code. The defendant does CT Page 2659 not dispute that a building permit is required, but points out that one cannot obtain a building permit without first obtaining a zoning permit, which is not available here because of the controversy between the Commission and the defendant.
Because of the requirement of a showing of irreparable harm, the court cannot order temporary injunctive relief based on the defendant's failure to obtain a building permit. The Building Official was unable to testify to any safety threat from the renovation work. Two other plaintiffs, however, did make the necessary showing of irreparable harm for other violations.
The Deputy Fire Marshal of the Westport Fire Department testified that there were several violations of the Connecticut Fire Safety Code at the Premises and that because some of these violations affected egress from the building, they pose threats to public safety. A threat to public safety clearly meets the requirement of a showing of irreparable harm.
At the request of the court the Deputy Fire Marshal made an inspection of the Premises during the temporary injunction hearing and then reported the results of his inspection in court. Based on his testimony, the court finds the following violations of the State Fire Safety Code at the Premises, all of which pose a threat to public safety:
 1. a gas hot water heater is located in a stair enclosure;
 2. locked doors restrict access to the second exit from the parking garage;
 3. kitchen equipment and supplies are stored in an exit stair enclosure;
 4. the reinstalled fire door at the bottom of the exit stair connecting the kitchen to the basement contains a hole which would permit smoke to enter the stair enclosure;
 5. the fire doors at the top of the exit stairs connecting the kitchen and the basement must be kept closed at all times or be equipped with automatic closing devices. CT Page 2660
With respect to items number 2 through 5 above, Kaye testified on the last day of the temporary injunction hearing that the necessary changes had been made, but that there had not been a reinspection by the Deputy Fire Marshal to confirm the corrections. With respect to item number 1 above, it is the defendant's contention that the hot water heater has been located in the exit stairwell for many years and no violation was previously cited. The defendant requested a modification and relief from the Connecticut Fire Safety Code with respect to the hot water heater, but the request was denied on August 9, 1993. In early February, 1994, six months later, the defendant filed an appeal of the August denial with the Connecticut State Codes and Standards Committee. The appeal was filed only as the temporary injunction hearing was coming to a close. Although the Fire Marshal generally awaits the outcome of any appeal before seeking enforcement, he has not previously had to wait six months simply for the appeal to be filed. Moreover, the modification process is intended to provide flexibility where there are existing conditions and there would be extreme hardship to conform to the Fire Safety Code. The defendant's appeal, which arises out of new construction done without permits or plan review, is unlikely to succeed.
The court finds that the defendant's appeal to the State Codes and Standards Committee is unlikely to succeed and that the appeal was not taken in good faith. The court, therefore, will not await the outcome of the appeal before ordering temporary injunctive relief.
Accordingly, the defendant 157 Easton Road Corp. is hereby ordered to refrain from any and all use of the Premises, including the operation of Arnold's Diner or any other restaurant at the Premises, until all of the Fire Safety Code violations set forth above, number 1 through and including number 5, have been corrected and the corrections have been verified and approved by the Westport Fire Marshal or Deputy Fire Marshal.
Arnold's Diner operates as a restaurant at the Premises, but does not have a valid food permit issued by the Westport/Weston Health District. At the request of the court during the temporary injunction hearing, the director of the health district inspected the Premises to determine compliance with the Public Health Code and then testified to the results of CT Page 2661 her inspection. The Director found four "four-point" violations at the Premises, as well as numerous other more minor violations. Four-point violations are the most egregious violations because they have the serious potential for exposure to bacteria, viruses or toxins which would make people ill. This potential to make people ill clearly constitutes irreparable harm. The violations are as follows:
 1. toxic items such as rubbing alcohol, caulking and metal polish were kept in the food preparation area;
2. food was stored in dented and rusty cans;
 3. the ice machine did not have the proper cross-connection or air gap to prevent the machine from taking in waste water; and
4. food was maintained at improper temperatures.
Violation number 1, the storage of toxins in food preparation areas, was immediately corrected during the inspection. On the last day of the temporary injunction hearing, Kaye testified that each of the violations, numbers two, three and four, as well as the more minor violations, had been corrected. However, there had been no time for a re-inspection by the Director or other personnel from the Westport/Weston Health District and the corrections therefore have not been confirmed.
Accordingly, the defendant 157 Easton Road Corp. is hereby ordered to refrain from any and all use of the Premises as a restaurant or other food source establishment until all of the remaining Public Health Code violations set forth above, number two, three and four, have been corrected and the corrections have been verified and approved by the appropriate representatives of the Westport/Weston Health District.
The two temporary injunctions set forth herein shall take effect upon the filing of this memorandum of decision with the clerk's office.
In conclusion, the court notes that the temporary injunctive relief ordered by the court in this action is far less broad in scope than the relief the plaintiffs sought. At CT Page 2662 times during the hearing on the temporary injunction, plaintiffs and witnesses for the plaintiffs made almost a personal plea to the court to issue temporary injunctive relief to stop the defendant's flagrant violations of applicable codes and laws. Although the defendant has indeed violated applicable codes and laws and the court is ordering enforcement of those particular violations which pose a threat of irreparable harm, plaintiffs must recognize that the court suffers constraints when issuing a temporary injunction which do not constrain the court when it is acting on a request for a permanent injunction. The important, fundamental difference between these two forms of relief must be considered by town officials when they plan their litigation strategy.
CHRISTINE S. VERTEFEUILLE, JUDGE