[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this application for temporary injunction, the Annex Young Men's Association, Inc. ("Annex") claims that the defendants ("City") have deprived it of such rights as it may have had to appeal a revaluation tax assessment, pursuant to General Statutes Sections 12-119, 12-62 and 12-55. A hearing was held on the application at which time testimony and documents were received into evidence.
The standard for the issuance of a temporary injunction is well settled.
 The principal purpose of temporary injunctions is to preserve the status quo until the rights of the parties can be determined after a full hearing on the merits. Olcott v. Pendleton, 128 Conn. 292, 295
(1941); Bridgeport Herald v. Lower Fairfield County Newsdealers Inc., 22 Conn. Sup. 111, 116-17 (1960). The issuance of an injunction "is the exercise of an extraordinary power . . ." Scoville v. Ronalter, 162 Conn. 67, 74 (1971). "An injunction is a harsh remedy." Leo Foundation v. Cabelus, 151 Conn. 655, 657 (1964).
 The requirements generally for a temporary injunction are (1) the establishment of a legal right, which involves a likelihood of success on the merits and the lack of adequate remedy at law and (2) the imminence of substantial and irreparable injury to the plaintiff, considered with the weighing of the results on both parties. Conn. Assn. of Clinical Laboratories v. Conn. Blue Cross, Inc., 31 Conn. Sup. 110, 113 (1973). In deciding whether to grant or dissolve a temporary injunction the court must balance the results which may be caused to one party or the other. Olcott v. Pendleton, supra at 295.
Kwiatkowski v. Johnson, No. CV93 0307032S (Oct. 27, 1993)10 Conn.L.Rptr. 311, 1993 Ct. Sup. 8798, 8798-99
The court finds the following facts. Annex is the owner of real CT Page 2346 property known as 560 Woodward Avenue, New Haven, Connecticut. The City has completed revaluation for the October 1, 2001 Grand List.
Through evidence, the City established the presumption that it (through its designated revaluation company) had mailed the revaluation notice to Annex, by putting into evidence its established mailing process for the notices that went out for commercial properties, which included Annex's property.
Annex's witnesses testified, as the normal custodians of the mail of Annex they received no such notice. Their testimony was not impeached (nor even cross-examined) regarding this issue.
The parties have previously been in litigation over the valuation of the property at issue here for the previous revaluation. As a result thereof, a court judgment was rendered. In that case, the plaintiff, Annex, attempted to amend to include the impending subsequent revaluation, which is now the subject of this litigation. The attempt was unsuccessful. As a result thereof, the only ability Annex would have to seek legal redress for the revaluation assessment as of the October 1, 2001 Grand List would be to appeal such notice of assessment as it would receive from the City.
The court finds that in the unique situation of these parties relating to the history of litigation between these parties as to the valuation of the Annex's real property, the Annex, (knowing it would likely appeal its assessment) would have been awaiting the disputed notice, since its appeal rights stem therefrom.
The court finds, based on the evidence presented, that the Annex has overcome the presumption that the City had mailed its revaluation notice in compliance with General Statutes § 12-62 (f).
As a result, thereof, the Annex has not had the opportunity to be heard on appeal as to the revaluation effecting its property for the Grand List of October 1, 2001. The City's interests in this matter are for an expeditious and orderly process of revaluation and collection of taxes based on the assessments. Those interests would not be harmed by restoring to the plaintiff the right of appeal that it never had the opportunity to exercise. Notwithstanding that, the City has opposed the application for injunctive relief and made clear that it is the defendants' position that the plaintiff has lost any right to appeal its assessment for the Grand List of October 1, 2001 by the passage of time: the time for taking an appeal has passed since the date it asserts there was a notice of mailing of notice pursuant to General Statutes § 12-62. CT Page 2347
"A decision to grant or deny an injunction must be compatible with the equities in the case and `balance the injury complained of with that which will result from interference by injunction.' Moore v. Serafin,163 Conn. 1, 6, 301 A.2d 238 (1972)." Raph v. Vogeler, 45 Conn. App. 56,62, 695 A.2d 1066, cert. denied, 241 Conn. 920, 696 A.2d 342 (1997). fn 2.
"The extraordinary nature of injunctive relief requires that the harm complained of is occurring or will occur if the injunction is not granted. Although an absolute certainty is not required, it must appear that there is a substantial probability that but for the issuance of the injunction, the party seeking it will suffer irreparable harm." (Internal quotation marks omitted.) AvalonBay Communities, Inc. v. Orange,256 Conn. 557, 566, 775 A.2d 284 (2001) fn3." Marquardt Roche/Meditz v. Riverbend E. Ct., 74 Conn. App. 412, 421-22 (2003).
The court finds there is no adequate remedy at law available to restore to plaintiff its procedural right of appeal regarding Grand List of October 1, 2001 without the granting of injunctive relief. To deny the plaintiff access to an assessment appeal, where no notice of the assessment has been given to the plaintiff, would deny the plaintiff its substantive due process and property rights under the fifth andfourteenth amendments to the federal constitution. At the same time, to grant this injunctive relief under the unique factual circumstances of this case would result in no substantial harm to the City: as it conceded at the hearing on the matter, it is likely that it would defend an appeal from plaintiff for subsequent Grand Lists; thus, the appeals may be joined together for efficient and non-duplicative hearings, and, the City may continue to collect taxes in accordance with the provisions for all properties upon which appeals have proceeded.
However, this is not an application for a permanent injunction it is an application for a temporary injunction. A temporary injunction is meant, only after finding all of the above, to preserve the status quo. It is afait d'accompli that the plaintiff's time to appeal under 12-119 is lapsed if notice is found. Accordingly, a temporary injunction does not preserve anything, but instead would act as a finality in the matter, thus mooting the need for a final injunction, or hearing thereon.
 First, because a temporary injunction is not a final judgment, there is no immediate right of appeal. Olcott v. Pendleton, supra at 294; Board of Education v. Shelton Education Assn., 173 Conn. 81, 88 (1977). The lack of a right of appeal makes the court wary of issuing a temporary injunction because the defendant cannot challenge the ruling or obtain relief from it despite the fact that the injunction may severely harm CT Page 2348 the defendant.[1]
Kwiatkowski, op. cit. at 8799, 10 Conn.L.Rptr. 311.
Based upon the evidence presented at the temporary injunction hearing, if no further contrary evidence is adduced by the defendants during the trial on the merits, an injunction may well then issue. The wait until then does not harm the plaintiff. Whatever rights of appeal it has lost are gone already, whether restored now or at a final hearing. At least from a final hearing, the defendants would have the right of appeal. In terms of judicial economy, however, if an injunction were to issue restoring the right of appeal to the plaintiff, it is sensible that it be accomplished during the time of the pendency of appeal from subsequent grand lists, so the same issues need not be tried again. Accordingly, while the motion for temporary injunction is denied, the court orders an expedited pleading schedule so that the matter can be brought to conclusion rapidly for judicial economy. The matter is ordered before the court for a status conference to accomplish the same on March 10, 2003.
Munro, J.