SAMUEL THOMAS *v.* AUGUST LENHART

SUPERIOR COURT      JUDICIAL DISTRICT OF      FILE No. 50689
FAIRFIELD AT STAMFORD

Memorandum filed March 17, 1982

*Connecticut Legal Services,* for the plaintiff.

*Richard H. Cunningham,* for the defendant.

1

MELVILLE, J. This is a forceable detainer action brought pursuant to General Statutes § 47a-43. The following are the pertinent facts: On or about November 2, 1980, the plaintiff and the defendant entered into a written agreement in which the defendant agreed to hire out a furnished room to the plaintiff for his use and the plaintiff agreed to pay the defendant a weekly sum therefor. The agreement further provided that the defendant was reserving unto himself possession and general control of said room subject only to the plaintiff's use thereof. The plaintiff agreed not to use the room as his home or residence. This agreement designated the parties thereto as "Lodger" and "Lodging House Keeper."

The building in which this room was located contained other rooms which were hired out to other persons under written agreements containing substantially the same terms. Kitchen and sanitary facilities which were located in other areas of the building were shared by all occupants. The plaintiff's room was secured by lock and he was given the key upon payment of the first week's fee. When the plaintiff moved in he brought with him his entire wardrobe and all of his personal effects and possessions. Between November 2, 1980, and January 20, 1981, the plaintiff used his room, slept in it each night and shared the sanitary facilities and kitchen privileges with the other occupants of the building on a daily basis. Sometime before January 20, 1981, the defendant informally notified the plaintiff that he was delinquent in his payments and would have to vacate the room. On January 20, 1981, while the plaintiff was out looking for a job, the defendant entered the room without the plaintiff's knowledge or consent and, without having initiated eviction proceedings under General Statutes § 47a-23, removed the plaintiff's personal effects, changed the lock on the door and rented the room to another person. The defendant further refused to return the plaintiff's clothing and other per-

sonal effects until the plaintiff paid all fees due and owing to the defendant which debt the plaintiff concedes was in fact due.

The plaintiff now brings this action for relief under General Statutes § 47a-43 claiming inter alia that he is entitled to the protection offered tenants under the landlord and tenant statutes, General Statutes §§ 47a-1 through 47a-74. The defendant claims that at all times relevent the plaintiff was a lodger and not a tenant and did not occupy the room as his residence, and, therefore, that the defendant had a right to a lien on the plaintiff's belongings pursuant to the boarding-house lien statute, General Statutes § 49-68.

General Statutes §§ 47a-23 and 47a-15a provide that when a rental agreement of any dwelling unit terminates because of nonpayment of rent, the owner shall give the occupant notice to quit. Two relevant definitions that apply to this summary process procedure are contained in § 47a-1: "(c) 'Dwelling unit' means any house or building, or portion thereof, which is rented, leased or hired out to be occupied, or is occupied as a home or residence of one or more persons. . . . (j) 'Roomer' means a person occupying a dwelling unit, which unit does not include a refrigerator, stove, kitchen sink, toilet and shower or bathtub and one or more of these facilities are used in common by other occupants in the structure." Therefore, a roomer who occupies a room as a dwelling unit is included under the statutory protection of summary process. The defendant urges, however, that the room in question is not a "dwelling unit" within the purview of the summary process in that the plaintiff agreed that the room was not to be used as his residence.

General Statutes § 47a-2 sets forth the only living arrangements exempted from summary process. "Roomers" as such are not exempted. "The careful delineation of the bounds of [an] exemption gives

unusual force to the principle that the express mention in a statute of one exemption precludes reading others into it." *Connecticut Light & Power Co.* v. *Walsh,* 134 Conn. 295, 301, 57 A.2d 128 (1948). In addition, the summary process statute being in derogation of the common law must be strictly followed and narrowly construed. *Windsor Properties, Inc.* v. *Great Atlantic & Pacific Tea Co.,* 35 Conn. Sup. 297, 301, 408 A.2d 936 (1979). On this basis, the only statutory exemption which might apply to the present living arrangement is "transient occupancy in a hotel or motel or similar lodging . . . . " General Statutes § 47a-2 (4). Indeed, the defendant maintains that he is a "Lodging House Keeper" and that the plaintiff is a lodger.

Prior to the enactment of the landlord and tenant statutes, the Connecticut courts recognized a distinction between a tenant and a lodger. *Carroll* v. *Cooney,* 116 Conn. 112, 163 A. 599 (1933); *Mathews* v. *Livingston,* 86 Conn. 263, 85 A. 529 (1912). "In [the] case of a tenancy the landlord has divested himself of the possession of the premises, the tenant has the exclusive right of possession and acquires an interest in the real estate giving him the right to maintain ejectment or trespass against the landlord. The lodger has merely the use of the room or rooms, the landlord retaining the general control." *Carroll* v. *Cooney,* supra, 115. In *Carroll,* our Supreme Court decided that the plaintiff was a lodger and that the defendant was entitled to a lodging house keeper's lien upon the goods of the plaintiff for the upaid rent.

The issue to be determined in the present case is whether the lodger-tenant distinction still applies, or if the 1977 legislation intended to include lodging-like arrangements within the purview of summary process law. The legislature did not revise or revoke the boardinghouse lien statute, § 49-68, when they

effected the major revision of landlord tenant law in 1977. Thus, the court must apply to the landlord and tenant statutes the "presumption that the legislature, in enacting a law, did so in view of existing relevant statutes and intended it to be read with them so as to make one consistent body of law." *Hurlbut* v. *Lemelin,* 155 Conn. 68, 74, 230 A.2d 36 (1967); *Kapa Associates* v. *Flores,* 35 Conn. Sup. 274, 279, 408 A.2d 22 (1979).

In applying this rule of construction the court concludes that the legislature in enacting the landlord and tenant statutes intended that a person who occupies a room as a residence is entitled to the protection of the summary process procedure while a person within the "transient occupancy" exception of § 47a-2 (4) might be subject to the boardinghouse lien. Therefore, in the present case, it will be necessary to determine if the plaintiff occupies the room as a resident or as a transient.

"A resident of a place is one who is an actual stated dweller in that place, as distinguished from a transient dweller there, and he may have a technical domicil elsewhere." *Don* v. *Don,* 142 Conn. 309, 311, 114 A.2d 203 (1955). In *State* v. *Anonymous (1977-7),* 34 Conn. Sup. 603, 605, 379 A.2d 1 (1977), the court reasoned that in determining if one was a transient guest, the following circumstances could be considered: "The length of stay, the existence of a special contract for the room, the fact that a person has another abode and the extent to which he has made the room his home for the time being . . . ."[1] In addition, the bona fide intent to reside at the time of entering into an agreement is another key factor to take into account. *Hathaway* v. *Bornmann,* 137 Conn. 322, 326, 77 A.2d 91 (1950).

---

[1] This case involved a question of theft of services under General Statutes § 53a-119. The crime of theft of services applies to a "transient guest at a . . . rooming house . . . ." General Statutes § 53a-119 (7).

Although, in the present case, the plaintiff signed an agreement stating that the room would not be his residence, he indicated at trial that he did not have another residence and, in fact, did consider the room his home. The agreement is dated November 2, 1980, and the dispute arose on or about January 20, 1981. Thus, the plaintiff had occupied the room for approximately two and one-half months at the time the defendant attempted to revoke the plaintiff's use of the room. Furthermore, the agreement itself contained no provision concerning the duration of the occupancy. It is also noteworthy that the plaintiff had with him in the room all his personal belongings, a fact the court finds totally inconsistent with a transient occupancy.

The plaintiff did fail to change his voting address with the registrar of voters and did, in fact, vote in his former district shortly after signing the agreement. Such facts, although evidence of the locus of one's residence, are hardly conclusive of the issue at hand. The court takes judicial notice of the fact that it was a presidential election that took place on November 4, 1980, some two days after the plaintiff signed the agreement in question. District residency is of no consequence in such an election. Therefore, failure to change his address two days before such an election does not necessarily negate the plaintiff's intent to acquire a resident status. Moreover, the plaintiff testified that he saw no need to change his address later as he would have no occasion to vote in the immediate future. Considering all of these circumstances, therefore, the court concludes that the plaintiff indeed had made this room his dwelling place for the time being.

Although a reading of General Statutes § 49-68 would seem to support the defendant's contention that he may avoid the application of the landlord and tenant statutes by entering into a "special

agreement," § 47a-2 expressly prohibits such agreements if they are created to avoid the application of designated sections of those statutes.

That such was the purpose of this agreement is clearly illustrated by the testimony of the defendant at trial that the overriding purpose of effecting such an agreement with the plaintiff and others in the building was to avoid the substantial expenses and time-consuming procedures associated with summary process proceedings. Therefore, the conclusion is inescapable that the plaintiff is a resident and entitled to protection under the landlord and tenant statutes.

Consequently, at the very least, the agreement between the parties in this case must be considered a "Rental Agreement" pursuant to § 47a-3 which permits the inclusion of any terms not prohibited by law. In this respect the provision therein granting the owner the right to immediately revoke the plaintiff's right to "use" the room is void and unenforceable being contrary to the notice provisions of §47a-23.

The court, therefore, finds that such conduct constituted a forcible entry into the plaintiff's dwelling unit and that the room, along with his personal effects, were detained with force. Accordingly, judgment shall enter against the defendant that the plaintiff be restored to possession of said room and, pursuant to § 47a-45a, a writ of restitution shall issue forthwith to that effect. Costs of this action are hereby awarded to the plaintiff.

This holding makes it unnecessary to determine the other claims of the plaintiff.