[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter is an appeal from a decision of the Watertown Board of Tax Review affirming the assessor's decision that the plaintiff's Bluebird recreation vehicle and his Ford pickup truck were taxable items in the year commencing October 1, 1988. The statutory authority asserted for placing the two vehicles on the tax list was General Statute Section 12-71b(g) which reads as follows:
 Any motor vehicle which is not registered in this state shall be subject to property tax in this state if such motor vehicle in the normal course of operation most frequently leaves from and returns to or remains in one or more points within this state, and such motor vehicle shall be subject to such property tax in the town within which such motor vehicle in the normal course of operation leaves from and returns to or remains, provided when the owner of such motor vehicle is a resident in any town in the state, it shall be presumed that such motor vehicle most frequently leaves from and returns to or remains in such town unless evidence, satisfactory to the assessor in such town, is submitted to the contrary.
Presumably this appeal was taken pursuant to General Statutes Section 12-119 as the vehicles are registered in Vermont and the plaintiffs claim for relief is that they should be removed from the Watertown tax list. The plaintiff's claim, if proven, means that he vehicles were taxed illegally. Faith Center, Inc. v. Hartford, 192 Conn. 434, 437 (1984).
A review of a proceeding before a municipal board of tax review requires a trial de novo. Faith Center, Inc. v. Hartford, supra ; Hutensky v. Avon, 163 Conn. 433, 436 (1972). Testimony was received from the plaintiff, his wife, Simone Columb and Barclay Burg as well as from the Assessor, John Pettuck, and two members of the Board, Dr. John Griffith, the chairman and Armand Madeux. Both the plaintiff and the Board submitted documentary evidence. At the plaintiff's request, the court viewed the exterior and interior of the Bluebird. From the evidence and the viewing, the court finds that the facts set forth below were established.
In July, 1988, Dr. Griffith received a telephone call from a Watertown taxpayer concerning a vehicle with a Vermont license plate that was parked at 77 Fern Hill Road. Dr. Griffith discussed the call with Mr. Pettuck who ascertained that 77 Fern CT Page 1948 Hill Road was real estate owned by the plaintiff and his wife. Mr. Pettuck went to 77 Fern Hill Road in July, 1988 and saw the Bluebird. He testified that on the same occasion he also saw the Ford pickup although this would have been impossible because, as the Board now concedes, the Ford pickup was not purchased until October 21, 1988.
From the Watertown police, Mr. Pettuck learned that the plaintiff owned the Bluebird and from the Motor Vehicle Department he learned that the plaintiff possessed a Connecticut operator's license. He also became aware that the plaintiff's wife, but not the plaintiff, was a Watertown voter. Supplementing his observation in July, Mr. Pettuck saw the Bluebird parked in the driveway at 77 Fern Hill Road once in August and once in September. In October, 1988, the Bluebird was no longer there.
Dr. Griffith saw the parked Bluebird four to six times. Mr. Madeux noticed the Bluebird in the summer of 1988 when he drove past 77 Fern Hill Road two or three times per day.
The 1988 grand list was finalized in January, 1989. Assessed values were assigned to the vehicles. In 1988, property in Watertown was assessed at 70% of market value. For the Bluebird, the assessment was $160,750.00 and for the Ford, the assessment was $4,700.00. Tax bills were mailed in July, 1989. The tax on the Bluebird was $7, 288.41 while the tax on the Ford was $213.10.
The receipt of the tax bills was the plaintiff's first notification that Watertown had taxed his vehicles. He claimed exemptions on the grounds of nonresidence before the Board in September, 1989. The Board denied his request to delete the two vehicles from the 1988 grand list.
The plaintiff's claim is that he moved from 77 Fern Hill Road to Vermont in 1986 when he retired as president of Grasshopper Lawn Service in Naugatuck. The business is a corporation. In the tax year of 1988, the plaintiff was a director and the owner of 51% of the stock and the owner of real estate where the corporation conducts its business. The other shareholders are his wife who is the corporations's secretary and their son, Douglas, who succeeded the plaintiff as president. In 1988, the plaintiff continued to attend corporate meetings.
Prior to retirement, the plaintiff considered 77 Fern Hill Road as his residence. In 1988 and presently, the property remains in the names of himself and his wife who resides there as an admitted Watertown resident. Other occupants, in 1988, were their son Douglas and his family. The house contains 2,400 square feet with four bedrooms and has a lot of four acres. At present, the house is occupied, in part, by the plaintiff's nephew who acts CT Page 1949 as caretaker for a reduced rental. After purchasing the Bluebird, the plaintiff increased the voltage at the Fern Hill Road house in order to accommodate the vehicle.
In addition to owning real estate in Watertown and Naugatuck, the plaintiff, in 1988, owned and still owns eighty-one acres of land in Franklin, Vermont and seven sites at Klondike Club, Inc., a mobile home park in Otis, Massachusetts. One of the Klondike sites is for the plaintiffs' vehicles and the remaining six are rented. He and his wife owned a home in Florida that was sold in 1989 and replaced by a site at a recreation vehicle resort in Mesa, Arizona.
A photograph of a portion of the Vermont land claimed by the plaintiff as his residence showed a gravel driveway and a garage or shed-type structure. At the Vermont property, there is a well, septic system, electricity and telephone.
The Bluebird was purchased on January 28, 1988 for $252,000.00 from Minuteman Auto Sales, Inc. of Chicopee, Massachusetts although delivery took place at the Bluebird factory in Georgia. Payment was made by a credit for $137,000.00 resulting from the trade-in of an older Bluebird and $115,000.00 in cash. The previous Bluebird had been registered in Vermont and then registered in Florida because, in the plaintiff's words, he liked the Florida license plate better. The Ford pickup was bought on October 21, 1988 for $9, 300.00 from Hungerford, Inc. in St. Albans, Vermont. The Ford is used for local transportation as it is not practicable to operate the thirty-five foot six wheel Bluebird on local streets. In traveling from one destination to another, the Ford is towed behind the Bluebird.
Titles and registration to the Bluebird and the Ford were in 1988 and still are in the names of "Douglas C. Columb and Simone S. Columb" meaning the plaintiff and his wife. On the Vermont registrations, the address of the owners is listed as 248 South Main Street, St. Albans.[1] The address in St. Albans is that of a mobile home park in which the plaintiff's mother owns her unit and rents her space. The plaintiff described the use of his mother's address as a matter of convenience. Franklin is about eighteen miles from St. Albans.
After picking up the Bluebird in Georgia on January 28, 1988, the plaintiff drove to West Palm Beach, Florida and from there to Connecticut and then to Massachusetts and Vermont. From Vermont, he returned to Connecticut and then drove to Georgia and Arizona. From Arizona, he went back to Georgia and then to Connecticut, Massachusetts and Vermont. In November, 1988, the Bluebird was in Watertown for Thanksgiving but two days later, the plaintiff and his wife left for Arizona and did not return until March, 1989. CT Page 1950 As of April 18, 1990 (the first day of trial), the Bluebird had been driven 38,000 miles and 52,000 miles had been put on the Ford pickup which accumulates mileage while being towed.
The position of Mrs. Columb as secretary of Grasshopper Lawn Service is not a full time day-to-day occupation. In the winter, she travels with the plaintiff. She testified that at other times she meets him at the Klondike Park and from there they go to Vermont for two to three weeks per time. Their stays in Massachusetts and Vermont are principally for leisure.
Mrs. Columb pays all of the bills incurred by herself and the plaintiff. All bills and Internal Revenue Service income tax forms are sent to 77 Fern Hill Road, Watertown. On November 28 and December 28, 1988, Mrs. Columb made payments of $1, 800.00 each to Weber Accessibility Systems of Richmond, Vermont for the purchase and installation of an invalid chair at St. Mary's Church in Franklin. On October 12, 1989, she paid Carpet Emporium $712.36 for carpeting at the same church. The checks placed in evidence were drawn on an account in the names of "Douglas or Simone Columb" at the Thomaston Savings Bank in Thomaston, Connecticut. No evidence of other bank accounts was introduced.
The Bluebird contains a bedroom, kitchen, dining area, living room, both with shower, water closet and a coach compartment. In the bedroom, there is a queen size bed and in the dining area, there is a sleep couch for two persons. The kitchen accommodates a fourteen cubic foot refrigerator and a stove with a micro-wave oven.
The plaintiff and his wife have four grown children, three of whom reside in Connecticut and one in Arizona. They visit with all of their children. The towns in Connecticut where the children reside are Fairfield, Prospect and Trumbull.
Before the court, the plaintiff claimed that the Bluebird was his home and that, in 1988, the Bluebird was in Vermont most of the time. Despite the Vermont registrations, the plaintiff operated the vehicles with a Connecticut driver's license. His latest license was obtained in June 6, 1989 with an expiration date of June 16, 1993. When questioned as to the discrepancy between the state of registry for the vehicles and the state of licensure to drive, the plaintiff's explanation was that it was easier for him to renew his Connecticut license than to obtain a Vermont one.
Upon registering the Bluebird in Vermont, Mrs. Columb paid a tax or fee of $372.00. Thereafter no taxes have been paid to any state. Vermont, apparently does not tax motor vehicles on a yearly basis. CT Page 1951
In 1989, the plaintiff became a voter in Vermont but has not, as of yet, exercised his franchise. The plaintiff has not voted anywhere since 1971. He and his wife moved to Watertown in 1972.
 II.
The language in General Statutes Section 12-71b(g) "provided when the owner of such motor vehicle is a resident in any town in the state, it shall be presumed that such motor vehicle most frequently leaves from and returns to or remains in such town unless evidence, satisfactory to the assessor in such town, is submitted to the contrary" was added to the statute by Public Act 77-570. The public act originated as a substitute for House Bill 5494 and was a revenue raising measure. In moving for adoption, Senator Beck made the following remarks:
 The purpose of this bill is to help the towns obtain additional revenue from the motor vehicle tax in the following way: presently a motor vehicle registered in another state is subject to the Connecticut Property Tax if it is, if it most frequently leaves from, returns to or remains in one or more points in the state in normal course of its operation. [The] [t]own within which such vehicle is taxable is the town where such operations most frequently occur. The bill would create a presumption in this law that whenever the owner of such a vehicle is a resident of any town in this state, the vehicle would most frequently leave from, return to or remain in such town of residence unless satisfactory evidence to the contrary is submitted to the local assessor. This helps to pick up motor vehicles which are registered out of the state when people live within [the] state and it should strengthen the hand of the assessor in dealing with these problems. The bill has been very carefully amended by work of the subcommittee of the finance committee in order to see to it that there are complete opportunities for appeal and questions and we think this will help very many towns in the state when the assessors go to work with the power behind this bill. I move that it be placed on Consent.
Senate proceedings, spec. sess. July 1977, vol. 20 part 10 pp. CT Page 1952 4078-79. Representative Wright made similar comments in the House of Representatives.
 This bill will allow us in the towns to collect additional property taxes that are due on motor vehicles that are registered out of state by making the presumption that if the owner is a Connecticut resident, then that automobile most frequently leaves the place of residence in Connecticut. There is a property tax due now, but it's to the assessor to prove that the automobile is usually in Connecticut. This assumption would make it that . . . The assumption is that the owner of the car would have to prove that it's . . . that it does not usually leave Connecticut. It would help raise additional taxes for our money . . . for our towns.
House proceedings, spec. sess. July, 1977, vol. 20 part 12 p. 5231.
Thus from the language of Section 12-71b(g), as reinforced by its legislative history, this proceeding involves two inquiries. The threshold question is whether the plaintiff and his wife who are joint owners of the vehicles were residents in the tax year, 1988. If they were residents, the burden is on them to prove that their vehicles were exempt. If they were not residents, the Board has the burden to establish that the vehicles were taxable.
The word "resident" is undefined in Section 12-71b. In the Board's brief, "residency" is equated with "domicil". The court disagrees with the fusing of two concepts that are distinct in law although admittedly the facts of this case do bring the two concepts close together. A domicil is an actual residence coupled with the intention of permanently remaining. The intention must be to make a home at the moment and not to make a home in the future. Adame v. Adame, 154 Conn. 389, 391 (1966). On the other hand, a resident of a place is one who is an actual stated dweller in that place as distinguished from a transient and he may have a technical domicil elsewhere. Don v. Don, 142 Conn. 309, 311
(1955); Thomas v. Lenhart, 38 Conn. Sup. 1, 5 (1982).
A familiar principle is that absent a contrary legislative intent, words, in a statute, are to be construed according to their common usage. General Statutes Section 1-1(a); Stizer v. Rinaldi's Restaurant, 211 Conn. 116, 118 (1989). Given the proposition that the law does not recognize the abandonment of a domicil until a new one has been established, McDonald v. Hartford CT Page 1953 Trust Co., 104 Conn. 169, 177 (1926), it is inconceivable that the term "resident appearing in Section 12-71b(g), a tax statute, was meant in a sense other than actual residency as stated in Don v. Don, supra and Thomas v. Lenhart, supra.
Mrs. Columb's ownership interest in the two vehicles apparently was not brought to the Board's attention.[2] By her own admission, however, she is a resident of 77 Fern Hill Road, Watertown. On the facts of the case, the court concludes that in the tax year commencing on October 1, 1988, her husband resided at the same address. They owned the house jointly or in common and had increased its voltage to provide service for the Bluebird. There was no evidence to suggest that the other occupant at the time, their son Douglas, had authority to exclude either of them pursuant to a lease. The plaintiff's business interest, bank account and members of his family were located nearby. The making of gifts to a church in Vermont is not necessarily inconsistent with residency in Connecticut. The plaintiff's trips to Vermont, and Massachusetts and Arizona as well, were for leisure activities. And in no state, other than Connecticut, was there an abode of permanence that could be called the plaintiff's home.
Moreover, the plaintiff's renewal of his Connecticut driver's license was a telling admission that he lived at 77 Fern Hill Road, Watertown, the address stated on the license. Connecticut motor vehicle operators' licenses are issued on the basis of residency in the state. See General Statutes Sections 14-36 (b) (2) and 14-39.
Accordingly, there existed a rebuttable presumption that the vehicles most frequently left from, returned to or remained in Watertown. "A presumption in favor of one party, that a particular fact is true, shifts the burden of persuasion to the proponent of the invalidity of that fact." Anderson v. Litchfield, 4 Conn. App. 24, 28 (1985). The plaintiff did not sustain the burden placed upon him by Section 12-71b(g). To be sure, there was conflicting testimony as to the amount of time the Bluebird spent in Connecticut in the summer and early autumn of 1988. But, as detailed in the court's findings of fact, the evidence was that the Bluebird entered and left Connecticut before going north to Massachusetts and Vermont or south to Georgia and Arizona. Under these circumstances, the court concludes that the plaintiff did not disprove the presumption that the Bluebird, in the normal course of its operation, most frequently left from and returned to Watertown.
Something more must be written about the Ford pickup that was not purchased until October 22, 1988. Our statutes provide for pro rata taxation but a full tax is due if the vehicle is bought before November 1st of the tax year. General Statutes Section CT Page 195412-71b(a); see Section 12-71c(a). The situation, as described by the plaintiff, was that the Ford went everywhere that the Bluebird went. Consequently, what has been said about the plaintiff's burden of proof with respect to the Bluebird applies with equal validity to the Ford.
 III.
Having concluded that the plaintiff, in the tax year 1988, resided in Watertown and that he did not rebut the presumption imposed by Section 12-71b(g), the court dismisses the plaintiff's appeal.
BARNETT, J.
ENDNOTES