### ALAN RAPH ET AL. *v.* ALAN R. VOGELER, JR.
### (AC 14262)

Landau, Heiman and Hennessy, Js.

Argued December 16, 1996—officially released May 6, 1997

*Stefan Underhill*, for the appellant (defendant).

*Thomas Beecher*, with whom, on the brief, was *Richard D. Arconti*, for the appellees (plaintiffs).

*Opinion*

LANDAU, J. The defendant, Alan R. Vogeler, Jr., appeals from the judgment, rendered after a trial to the court, granting a permanent injunction ordering the defendant to remove all encroachments, erections and structures that the defendant placed on the property of the plaintiffs, Alan Raph and Mary Ann Raph, to restore the real property to its original condition, and to refrain from entering the real property for any purpose. The trial court also awarded attorney's fees in the amount of $8000. On appeal, the defendant claims that the trial court improperly (1) failed to join an indispensable party, (2) exercised its discretion in granting the injunction, and (3) awarded attorney's fees. We affirm the judgment of the trial court in part and reverse it in part.

The trial court found the following facts. The parties own adjoining properties on Candlewood Isle in New Fairfield. The plaintiffs purchased lots twenty-one and twenty-two and the north half of lot twenty-three in 1971, and the defendant purchased lots nineteen and twenty in 1987. In 1989, the defendant constructed a brick patio and walkway, a tram, tram track and station, a sprinkler system, a retaining wall and parking area

and a shed, and placed underground wires, all on the plaintiffs' land.

In their complaint, the plaintiffs alleged a continuing trespass by the defendant that deprives them of the use and enjoyment of their property and claimed that the defendant's actions have caused them irreparable harm for which they have no adequate remedy at law. They sought injunctive relief, monetary damages, treble damages pursuant to General Statutes § 52-560, and attorney's fees.

I

The defendant first claims that the plaintiffs' failure to join Citibank, N.A., the mortgagee of the defendant's property, as a party to the action requires reversal because the trial court lacked subject matter jurisdiction to issue its remedy. Specifically, he asserts that Citibank is an indispensable party and that the absence of an indispensable party deprives the court of subject matter jurisdiction. The plaintiffs contend that Citibank is not an indispensable party and, therefore, no issue of subject matter jurisdiction exists. Accordingly, the plaintiffs further contend that since the defendant failed to raise the issue before the trial court, he waived the issue here on appeal.[1]

"It is axiomatic that a tribunal must have jurisdiction over the subject matter it hears and that subject matter jurisdiction is the power of the tribunal to hear and determine cases to which the proceedings in question belong. *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 4, 675 A.2d 845 (1996)." *Keegan* v. *Aetna Life & Casu-*

---

[1] The plaintiffs also claim that the defendant violated Practice Book § 4013 by not including this issue in his preliminary statement of issues on appeal. The defendant's failure to raise this issue in his preliminary statement of issues does not preclude its review unless the plaintiffs are prejudiced thereby. *State* v. *McIver*, 201 Conn. 559, 568 n.3, 518 A.2d 1368 (1986). We conclude that the plaintiffs are not prejudiced by our review of this issue.

*alty Ins. Co.*, 42 Conn. App. 803, 805–806, 682 A.2d 132, cert. denied, 239 Conn. 942, 686 A.2d 120 (1996). Although Citibank's absence as a defendant was not raised in the trial court, we are not precluded from addressing the issue of whether its absence implicates the subject matter jurisdiction of the trial court. See *Cardillo* v. *Cardillo*, 27 Conn. App. 208, 212–13, 605 A.2d 576 (1992). Moreover, the question of subject matter jurisdiction may be raised at any time and cannot be waived by either party. *Cohen* v. *Cohen*, 41 Conn. App. 163, 165, 674 A.2d 869 (1996).

"Parties are considered indispensable when they not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such condition that its final [disposition] may be . . . inconsistent with equity and good conscience. . . . Indispensable parties must be joined because due process principles make it essential that [such parties] be given notice and an opportunity to protect [their] interests by making [them] a party to the [action]. . . . Necessary parties, in contrast, are those [p]ersons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. . . . [B]ut if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties." (Citations omitted; internal quotation marks omitted.) *Napoletano* v. *Cigna Healthcare of Connecticut, Inc.*, 238 Conn. 216, 225–26 n.10, 680 A.2d 127 (1996).

The defendant asserts that Citibank is an indispensable party in an action for trespass where the defendant

is ordered to remove encroachments from the plaintiffs' property. He is unable, however, to cite any case from any jurisdiction that supports this argument. Our own research also fails to disclose any authority for this proposition. Moreover, the record is devoid of facts in support of this claim.[2] There are no facts to support the defendant's claim that Citibank's rights are sufficiently affected to require that it be named a necessary or indispensable party. Further, there are no facts in the record establishing that Citibank has any concern whatsoever regarding the status of its collateral, the present principal balance of the loan, the market value of the property, or the extent to which it relied on the value of the subject improvements in placing its loan. A review of the record clearly demonstrates that Citibank has no legal interest in the outcome.[3]

Additionally, unlike a declaratory judgment, an injunction can be issued even if otherwise necessary parties are not joined. See T. Tondro, Connecticut Land Use Regulation (1996 Sup.), p. 264, citing *Mannweiler* v. *LaFlamme*, 232 Conn. 27, 653 A.2d 168 (1996). The defendant claims the holding in *Mannweiler* v. *LaFlamme*, supra, 35–36 n.10,[4] suggests the opposite. We disagree.

---

[2] The only facts offered by the defendant in support of this belated claim that Citibank is an indispensable party are contained in a one and one-half page affidavit from a vice president of Citibank appended to the defendant's appellate brief *but not offered at trial*.

[3] Moreover, nonjoinder of Citibank will not result in a multiplicity of litigation as there is no feasible or demonstrable reason why Citibank would now litigate this matter.

[4] Footnote 10 in *Mannweiler* v. *LaFlamme*, supra, 232 Conn. 35–36, states: "[W]e would have concluded that a trial court lacks jurisdiction to rule on a request for injunctive relief when that relief depends on a de facto declaratory judgment as to the rights of interested parties who have not been given proper notice. We therefore overrule anything in *Manley* [v. *Pfeiffer*, 176 Conn. 540, 409 A.2d 1009 (1979)] to the contrary." *Manley* involved an action for a mandatory injunction for the removal of a fence, for a declaratory judgment and for other relief.

This case is distinguishable from *Mannweiler* and *Manley* v. *Pfeiffer*, 176 Conn. 540, 409 A.2d 1009 (1979). In *Mannweiler* and *Manley*, the requested remedies were, inter alia, injunctive relief accompanied by a claim for a declaratory judgment. "The plaintiffs' claims for injunctive and declaratory relief both rise or fall on the interpretation of the deeds at issue in the case and are, therefore, inexorably intertwined." *Mannweiler* v. *LaFlamme*, supra, 232 Conn. 35. Here, the plaintiffs did seek injunctive relief, but neither party requested declaratory relief. In *Mannweiler*, the court did not dispute that a court has subject matter jurisdiction to rule on a plaintiff's request for an injunction if it is contained in a complaint that does not also seek a declaratory judgment. See id., 43 n.9 (*Berdon, J.*, dissenting). The defendant's reliance on *Mannweiler* is misplaced. We conclude that Citibank is neither a necessary nor an indispensable party and its nonjoinder does not affect the jurisdiction of the trial court to effectuate a remedy.

## II

Having concluded that the appropriate parties are before the court, we now turn to the primary issue of whether the trial court abused its discretion in granting the injunction. The defendant argues that the trial court improperly exercised its discretion in granting the injunction. We disagree.

The following additional facts are relevant to this claim. When the defendant purchased the property, he became familiar with map no. 1533, on file in the office of the town clerk, which was prepared by C. James Osborne, Jr., in 1971. That map refers to a map prepared in 1936 by Leslie A. Davis, a registered engineer, and is referenced in the plaintiffs' deed. In 1987, the defendant hired Osborne to survey his property in connection with an application for a variance. When the defendant

decided to renovate his house, he retained David White to prepare a survey. White prepared a map, dated April 5, 1989, certified to the standards of an A-2 survey. Subsequently, White prepared a boundary plan showing the completed additions and also the encroachment of the plaintiffs' steps and deck onto the defendant's property. In preparing his survey, White reviewed Osborne's 1971 and 1987 surveys and specifically relied on Osborne's 1987 survey. Approximately eighteen months later, the defendant showed this map to the plaintiffs, who contacted Tracy Lewis to survey their property.

Lewis reviewed old files, including an original map of Candlewood Isle, researched deeds of the property of the plaintiffs and their neighbors, consulted with other surveyors and had access to Osborne's worksheets. From his inquiries and examinations, he concluded that Osborne used the wrong angle on Sunrise Road, at the point where lots twenty-one and twenty-two abut, which is south of the Raph-Vogeler property line. Osborne's use of an incorrect angle skewed all the property lines in a northerly direction off Sunrise Road.

"Injunction is available in a suitable case, and will ordinarily issue at the suit of a landowner to compel the removal of encroachments." (Internal quotation marks omitted.) *Branch* v. *Occhionero*, 239 Conn. 199, 206, 681 A.2d 306 (1996). A decision to grant or deny an injunction must be compatible with the equities in the case and "balance the injury complained of with that which will result from interference by injunction." *Moore* v. *Serafin*, 163 Conn. 1, 6, 301 A.2d 238 (1972).

Our Supreme Court recently set forth the governing principles for our standard of review as it pertains to a trial court's discretion to grant or deny a request for an injunction: "A party seeking injunctive relief has the burden of alleging and proving irreparable harm and

lack of an adequate remedy at law. . . . A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion. . . . Therefore, unless the trial court has abused its discretion, or failed to exercise its discretion . . . the trial court's decision must stand." (Citations omitted; internal quotation marks omitted.) *Advest, Inc.* v. *Wachtel*, 235 Conn. 559, 562–63, 668 A.2d 367 (1995).

The trial court acted well within its discretion in determining that the plaintiffs were irreparably harmed and had no adequate remedy at law. The trial court, after hearing and observing the witnesses and viewing the property, found the testimony of Lewis, who testified on the plaintiffs' behalf, more credible than that of the defendant's witnesses, Osborne and White. The court found Osborne to be less than forthcoming in his testimony and noted that he did not rebut Lewis' testimony regarding the correction of the angle. The trial court further did not credit the 1971 and 1987 surveys prepared by Osborne and the survey prepared by White, for which White relied on Osborne's 1987 survey.

The trial court also balanced the equities between the parties. It found that the following factors weighed in favor of granting injunctive relief to the plaintiffs: the impairment of the plaintiffs' right to access and use of their property, and, if the Osborne survey was accepted, that the plaintiffs' steps would encroach on the defendant's property. Further, the plaintiffs would lose a significant portion of their frontage on Lake Candlewood.

The trial court considered and rejected the following factors weighing against the granting of injunctive relief: removal of the structures would involve a cost,

but the patio was not laid in cement and the area could be restored to plantings; the tram, while a convenience, is not a necessity; and, handrails could be provided for the steps leading to the house. In light of these factors, we conclude that the trial court properly determined that the equities lie in favor of granting the permanent mandatory injunction.

Finally, the defendant argues that money damages will adequately compensate the plaintiffs and, therefore, the extraordinary remedy of injunction should not lie. "A remedy at law, to exclude equity jurisdiction, must be as complete and beneficial as the relief in equity." *Beach* v. *Beach Hotel Corp.*, 117 Conn. 445, 453, 168 A. 785 (1933). The trial court found that while the plaintiffs could have valued the land on which the defendant encroached or the value of an easement, no monetary value could be placed on the loss of free access to and the use of the plaintiffs' property. As a result, the trial court concluded that monetary damages were not an adequate remedy at law. Under the circumstances of this case, it is clear that the plaintiffs' remedy at law was not adequate.

We hold, therefore, that the trial court properly exercised its discretion in determining that the plaintiffs were entitled to injunctive relief and in fashioning its order for permanent mandatory injunctive relief.[5]

### III

Finally, the defendant claims that the trial court improperly awarded attorney's fees to the plaintiffs. We agree.

---

[5] In this appeal, the defendant raises for the first time the claim of laches. At the trial level, the special defense of estoppel was raised and rejected by the trial court. That issue was not argued by the defendant and, thus, is deemed to be abandoned. See *Field* v. *Kearns*, 43 Conn. App. 265, 280, 682 A.2d 148, cert. denied, 239 Conn. 942, 684 A.2d 711 (1996). We decline to rule as to the claim of laches. See *Keeney* v. *Old Saybrook*, 237 Conn. 135, 142 n.7, 676 A.2d 795 (1996).

"In the United States, the general rule of law known as the 'American Rule' is that 'a prevailing litigant ordinarily is not entitled to collect a reasonable attorney's fee from the opposing party as part of his or her damages or costs. . . .' There are certain exceptions to this rule. . . . In the main, exceptions are based upon statutory or contract provisions authorizing the recovery of attorney's fees by a prevailing litigant." (Citations omitted.) *Brookfield* v. *Candlewood Shores Estates, Inc.*, 201 Conn. 1, 14–15, 513 A.2d 1218 (1986). Attorney's fees may also be awarded as a component of punitive damages. *O'Leary* v. *Industrial Park Corp.*, 211 Conn. 648, 651, 560 A.2d 968 (1989), quoting *Markey* v. *Santangelo*, 195 Conn. 76, 80, 485 A.2d 1305 (1985).

We have been directed to no exception that can fairly be said to authorize the attorney's fees awarded nor do we perceive any authority to do so on this record. No statutory or contractual basis for such a recovery is evident. The fact that the defendant was informed that such damages were being sought in the plaintiffs' prayers for relief provides no ground for the foundation of their argument. The plaintiffs rely on the trial court's finding that the defendant was indifferent to the warning signals that pointed to a boundary dispute. This finding does not amount to wanton or wilful malicious conduct; see *Markey* v. *Santangelo*, supra, 195 Conn. 77; sufficient to qualify for an award of punitive damages.[6] Thus, the trial court improperly awarded attorney's fees in this matter.

The judgment is reversed only as to the award of attorney's fees and the case is remanded with direction to render judgment as on file except as modified to eliminate the award of attorney's fees.

In this opinion the other judges concurred.

---

[6] We do not reach the question whether the failure to allege punitive damages in the complaint prevents the trial court from awarding such damages.