[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for a writ of restitution, brought pursuant to the entry and detainer statute, General Statutes § 47a-43(a)(4), and an action to enjoin the defendants from continuing to blockade the plaintiff town's property, and for other relief, brought to the Superior Court in the judicial district of Windham, Housing Session at Danielson. The parties have submitted a detailed stipulation of facts and agree that there are no disputed issues in relation thereto. The relevant facts are CT Page 2008 as follows.
The defendants reside at 325 Mansfield Road in the town of Ashford. This property is owned by the defendant, Flora Rogers, by virtue of a 1995 quit claim deed from the defendant, David Rogers. Abutting this property is an abandoned highway known, among other names, as old Route 89 (highway or land). In a document dated December 6, 1940, the state highway department notified the town of its abandonment of this highway and the highway's subsequent reversion to the town. (Joint Exhibit E.) At a special town meeting, in February 1941, the town voted to close this highway. (Joint Exhibit G.) By virtue of the town's discontinuance of this highway, the Rogers claim an ownership interest therein. (Stipulation, ¶ 3.) In April of 1999, the Rogers erected a barrier across the highway and, despite demand by the town, have refused to remove it.
The town filed its amended complaint on December 1, 1999, seeking a writ of restitution, an injunction ordering removal of the barrier and other damages and relief in accordance with General Statutes § 47a-45a
and § 47a-46. The complaint was brought in three counts: (1) illegal detainer, pursuant to General Statutes § 47a-43(a)(4); (2) ejectment; and (3) trespass. The parties have stipulated that there are four issues of law in this case and ask the court to decide these issues in the manner of a motion for summary judgment. (Stipulation of the Parties, ¶ 19 (a-d).) Specifically, the parties stipulate to the following four issues of law: (1) whether the town's action, brought pursuant to § 47a-43(a)(4), is barred by the statute of limitations contained in General Statutes § 52-589; (2) whether the town's discontinuance of the highway in 1941, gave the defendants a property interest; (3) whether the placing of the barrier upon the highway constitutes a trespass; and (4) whether the requested relief, i.e., restitution and injunctive relief, is proper in this case. (Stipulation of the Parties, ¶ 19 (a-d.)
Although the parties argue the applicability of the statute of limitations contained in § 52-589,[1] relating to forcible entry and detainer, the entry and detainer statute, § 47a-43 is probably not applicable in this case.
General Statutes § 47a-43 (formerly § 52-462), entitled, "Complaint and procedure: Forcible entry and detainer; entry and detainer" provides: "(a) When any person (1) makes forcible entry into any land, tenement or dwelling unit and with a strong hand detains the same or (2) having made a peaceable entry, without the consent of the actual possessor, holds and detains the same with force and strong hand CT Page 2009 or (3) enters into any land, tenement or dwelling unit and causes damage to the premises or damage to or removal of or detention of the personal property of the possessor, or (4) when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession, the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the Superior Court."
The summary process statute governing entry and detainer must be strictly followed and construed because it is in derogation of the common law. See Thomas v. Lenhart, 38 Conn. Sup. 1, 4, 444 A.2d 246 (1992). The purpose of the Connecticut entry and detainer statute § 47a-43, which is part of the Landlord and Tenant Act, General Statutes § 47a-1, et seq., is to prohibit a property owner from entering his or her property in the act of taking possession thereof from one not legally entitled to such possession but who, nonetheless, maintains actual possession of such property. An action in entry and detainer is one brought by an illegal possessor who was dispossessed by the owner of the property without the benefit of proper legal proceedings; it is not an action that can properly be maintained by a property owner against the illegal peaceful possessor. See Carrier v. Carrier, 85 Conn. 203, 206, 82 A. 187 (1912) ("[t]he statute against forcible entry and detainer . . . makes it unlawful for the owner, or one having the right of possession of land, to forcibly and with strong hand enter and dispossess a person who has the actual, peaceable possession of such land, although the latter has no right of possession"). As explained in Connecticut Real Property Law: "The tenants' remedy for a `lock-out,' an illegal or self-help eviction by the landlord or others, is the remedy of entry and detainer." R, Burke, Connecticut Real Property Law (1994) § 47, p. 126.
"The process of forcible entry and detainer, provided by our statutes, is in its nature an action by which one in the possession and enjoyment of any land, tenement or dwelling unit, and who has been forcibly deprived of it, may be restored to the possession and enjoyment of that property. This process is for the purpose of restoring one to a possession which has been kept from him by force. See generally Communiter BreakCo. v. Scinto, 196 Conn. 390, 493 A.2d 182 (1985). For a plaintiff to prevail, it must be shown that he was in actual possession at the time of the defendant's entry. Id., 393. Section 47a-43 `was made to protect a person in such possession, although a trespasser, from disturbance by any but lawful and orderly means.' Orentlicherman v. Matarese, 99 Conn. 122,126, 121 A. 275 (1923)." Berlingo v. Sterling Ocean House, Inc.,203 Conn. 103, 108, 523 A.2d 888 (1987).
"Under the ancient common law an owner dispossessed of his land had the CT Page 2010 right thus to retake it but after a time the consequent evils seemed too serious to be endured. In the year 1381, a statute (5 Rich. II, Ch. 7) was passed which provided that `None from henceforth may make any entry into any lands and tenements, but in case where entry is given by law; and in such case not with strong hand, nor with multitude of people, but only in a peaceable and easy manner.' Similar provisions were expressly adopted in the Colony of Connecticut in 1689 and in 1722, and in 1821 were in substance enacted by the legislature of the State in the statute now in force. General Statutes, § 6028 [now § 47a-43]. This law makes it unlawful for a dispossessed owner to retake possession of his land by force. In an action under this statute, if the plaintiff alleges and proves that he was in actual, peaceable possession of the land, the owner cannot set up his title or right of possession in defense of his entry made with force and a strong hand. Bliss v. Bange, 6 Conn. 78, 80
[(1826)]. The actual, peaceable possession of the plaintiff, however obtained, could not be put an end to without some process of law. Larkinv. Avery., 23 Conn. 304, 310 [(1854)]. This statute was made to protect a person in such possession, although a trespasser, from disturbance by any but lawful and orderly means. In an action of trespass for forcible entry, not brought on this statute, [the Supreme Court] has said that it would be illogical to permit a defendant to set up such a defense.Carrier v. Carrier, 85 Conn. 203, 207, 82 A. 187 [(1912)]. The dispossessed owner may not take the law into his own hands and by force eject a trespasser who is in actual, peaceable possession. McAllin v.McAllin, 77 Conn. 398, 402, 59 A. 413 [(1904)]. "There are several reasons why the law cannot suffer a forcible entry upon a peaceable possession, even though it be in the assertion of a valid title against a mere intruder: First. Whoever assumes to make such an entry makes himself judge in his own cause, and enforces his own judgment. Second. He does this by the employment of force against a peaceable party. Third. As the other party must have an equal right to judge his own cause, and to employ force in giving effect to his judgment, a breach of the public peace would be invited, and any wrong, if redressed at all, would be redressed at the cost of a public disturbance, and perhaps of serious bodily injury to the parties.' 2 Cooley on Torts (3d Ed.) 663.
"A wrongfully dispossessed owner has adequate and peaceable remedy by legal process to recover possession of his land; but he must set up and prove his better title or superior right of possession. So, too, in an action against such an owner for trespass, either by peaceable or by forcible entry, if he would rely on his better title or superior right of possession in defense, he must plead it distinctly, and proof without such pleading will not be sufficient." Orentlicherman v. Matarese, 99 Conn. 122,125-27, 121 A. 275 (1923). CT Page 2011
The Connecticut Summary Process Manual also explains: "Forcible entry and detainer is a statutory action, but is grounded in English common law. The present statute has its genesis in the public policy of protecting the peace of the neighborhood and a proscription against the use of self-help remedies to retake the demised premises.
"The process of forcible entry and detainer is an action by which one in possession and enjoyment of any land, tenement, or dwelling unit who has been forcefully deprived of it may be restored to the possession of that property. It gives the dispossessed a peaceful avenue to retake possession by lawful means and continues the public policy prohibiting the dispossessed from taking by force.
"The subject matter of this type of suit is possession and not title. For this reason, a landlord cannot retake possession of the apartment if the tenant holds over beyond the term or fails to pay rent. This is to be contrasted to a situation in which the landlord enters the premises and removes personal property pursuant to a default clause of a lease allowing the lessor `to enter the tenant's premises, seize the tenant's personal property and sell it as a way of recovering rent and other charges. . . .'
"To succeed [in an action for entry and detainer] a dispossessed plaintiff must prove. that he or she was in actual and peaceful possession of the premises and that the defendant forcibly entered and forced out the plaintiff, or dispossessed the plaintiff by force after a peaceful entry. The title or ultimate right of possession is not involved. The possessor must be in actual possession of the premises at the time the unauthorized entry was effected." P. Marzinotto, The Connecticut Summary Process Manual (5th Sup. 1997) c. XIV, pp. 240-240a.
The town, as the alleged owner of the discontinued highway, may not bring an action for entry and detainer against one allegedly in illegal possession thereof. Even if the town could bring such an action as the alleged owner of the highway, it has failed to allege and prove that it had actual and peaceful possession of the highway, which it discontinued approximately forty years ago, at the time the defendants erected their barrier. Accordingly, the town's claim, under § 47a-43(a)(4), fails, and the applicability of the time limitations contained in § 52-589
need not be addressed.
The town argues that, regardless of its discontinuance of the highway, it clearly owns the land upon which the highway was located. Specifically, it argues that "[t]here is nothing in the record of this case to show that the original layout of the highway passed entirely over CT Page 2012 the property of Flora Rogers or any of her predecessors in title." (Town's Brief, pp. 11-12.) The Rogers argue that, as successors in title to the original persons that owned their property adjacent to the highway, they now own the discontinued highway based upon the common law presumption that abutting landowners own the fee to the center of a public highway.
The Rogers are correct in their statement of the law. "The law in this state is clear that the taking of a highway creates no interest in fee, the presumption being that the landowners whose lands abut the highway continue to be owners of the fee in the land to the center of the highway. Ventres v. Farmington, 192 Conn. 663, 668-69 n. 3, 473 A.2d 1216
(1984); Luf v. Southbury, 188 Conn. 336, 341, 449 A.2d 1001 (1982);Antenucci v. Hartford Roman Catholic Diocesan Corporation, 142 Conn. 349,355-56, 114 A.2d 216 (1955); Peck v. Smith, 1 Conn. 103, 132, 6 Am. Dec. 216 (1814) (Swift, J.). `The soil of a highway descends to heirs and passes to grantees as an appurtenant to the land adjoining, and whenever the highway is discontinued, the adjoining proprietors hold the land discharged of the easement.' Antenucci v. Hartford RomanCatholic Diocesan Corporation, supra, 356." Ruggiero v. East Hartford,2 Conn. App. 89, 97, 477 A.2d 668 (1984). Accordingly, the Rogers are presumed to own the fee in the land to the center of the highway. This presumption must be upheld unless the town can provide sufficient proof that it is the actual owner of the land.
"As a general matter, `[a] presumption in favor of a party, that a particular fact is true, shifts the burden of persuasion to the proponent of the invalidity of that fact, and that burden is met when, by the particular quantum of proof, the validity of the fact has been rebutted.Holland v. Holland, 188 Conn. 354, 357-58, 449 A.2d 1010 (1982). . . .'Anderson v. Litchfield, 4 Conn. App. 24, 28, 492 A.2d 210 (1985). The contradicting evidence required to rebut a presumption must be both sufficient and persuasive. Katz v. West Hartford, 191 Conn. 594, 603,469 A.2d 410 (1983)." Anderson v. Nedovich, 19 Conn. App. 85, 89,561 A.2d 948 (1989).
In rebuttal of the presumption that the Rogers own the fee at least to the middle of the. highway, the town provides the court with a document of the General Assembly. dated 1725. The town historian, who is also the town clerk and a previous judge of probate, has attested, via affidavit, that it is more likely than not that this document relates to the highway in question. (Joint Exhibit T.) The document[2] provides, in part: "At a General Assembly holden at Hartford May 13, 1725 this Corte grants liberty to the Town of Ashford to lay out highway through lands of the claimant of that part of Ashford called Scituate acording to the act of CT Page 2013 assembly afforeto as it is recorded. Direction therefrom may be had — therefor — We the subscribers (having attended the affore said act of said assembly and give notis to Colonel John Chandler he being a propriter in the Common or unsurvayed land in that part of Ashford commonly called New Scitaute) proceeded to lay out pertickalur 
necessary highway — March 13, 1727. . . .[T]his road was laid on common land from the beginning to the end." (Joint Exhibit S.)
The town argues that the phrase "this road was laid on common land from the beginning to the end" means that it was laid not on private land, but on public land. Accordingly, it argues the Rogers do not have a fee interest in the highway. Although the town historian has attested that this document probably relates to the highway in question, she offers no opinion as to the meaning of the document. Although the document clearly states that the "road was laid on common land," it also states that the "Corte" gave permission to the town to lay a highway through lands of the claimant of the part of Ashford called Scituate. It then states that it gave notice to a "propriter" in the common or "unsurvayed" land, one Colonel John Chandler.[3] The court must analyze what was meant by the term "common land" in 1725, when permission to lay this road was granted to the town.
In the early days of the Connecticut colony, "common lands . . . were reserved to the commonwealth." H. Scudder, American Commonwealths: Connecticut, A study of a Commonwealth-Democracy, (1887) c. VII, p. 95. "The early colonists of Connecticut deemed it important to strengthen their land titles by purchasing the territory from the aborigines. . . . Before 1639 this was done by the proprietors, but after that time all unoccupied lands became public domain, subject to the control of the colony." F. Morgan, Connecticut as a State or One of the Original Thirteen (1904) c. XVI, p. 275. "Among the early laws of the colony was one prohibiting the purchase of lands from the Indians without the sanction of the General Court. This law, which was often violated, was not promulgated for the purpose of protecting the Indians, but to establish the claim of the colony to all unbought and unoccupied lands." Id., 276. "New England settlers had come from England thoroughly imbued with the idea of individual property in land; and the land, when once allotted, became purely individual property, subject to alienation or devise, without return to the common stock. But there was necessarily a certain amount of land, larger or smaller, which was not needed for immediate allotment; and the rules of the community were pretty rigidly applied to this. It was the property of all, and was at first regulated by the town authorities." H. Scudder, supra, 96.
"The term `common' is normally construed in grants or dedications to CT Page 2014 indicate any general use for the benefit of the public, so that this term is given a somewhat broader interpretation than the word `park' or `square.' But in New England the term `common' was originally applied to lands held by the original proprietors of the town for their own common use for pasturage and procurement of firewood. Such lands were not for the use of later inhabitants of the town, but only for the private use of the original proprietors. Much of the original land included within the `common' has been withdrawn from such use by the original proprietors, and what remains today has passed into the control of the municipality so as to have become a public park or square." 2 American Law of Property (Casner Ed. 1952) § 9.56, p. 503.
As explained in Peck v. Smith, 1 Conn. 103, 1.11 (1814), "[w]hen new townships have been taken up, . . . it has been the general, if not the universal practice, to reserve lands for highways. The reserving or making of highways has been coeval with the division of lands among the proprietors. This reservation . . . must of course have been to the public. At any rate, it could not have been a mere right of passage over the land of an individual, inasmuch as no individual ever separately owned the land so reserved. As to all the ancient highways, then, it seems to me, there can be no pretence that they are mere rights of passage over the lands of an individual." Id.
The court in Peck further explained that "[i]n the year 1699, it appears by the statute book, jurisdiction relative to laying out and altering highways, was first given to the county court. Previous to this time, I presume, it was seldom or never practiced to lay out a highway through the lands of an individual proprietor, as there was a sufficiency of common lands not taken up for all highways thought to be necessary." Id., 112.
"In the New England colonies the term `common' was applied to a particular class of lands, which belonged, not to the municipality or to individuals, but rather to associations of individuals. This system of holding lands arose from the frequent practice, upon the founding of a town, of reserving a large portion of the territory within the town limits, to be utilized by the settlers in common for pasture, cultivation, the procuring of timber or building stone, and like purposes. Tracts of land thus reserved were called `commons,' `common lands,' or `general fields,' and the persons entitled to share in the benefits thereof were known as `proprietors,' in contradistinction to those who, becoming inhabitants of the town at a later period, were not regarded as entitled to such benefits. As time went on, these common lands became reduced in quantity, owing to the extensive allotments of parts thereof by the proprietors to individuals, and those which remained CT Page 2015 common came gradually, as the numbers of the non-proprietors increased so that they controlled the policy and public opinion of the town, to be regarded as the property of the town, rather than that of the proprietors or their descendants. . . ." 2 H. Tiffany, Real Property (2d Ed. 1920) § 418, p. 1541.
The "common land" referred to in the document refers to land that was held by the proprietors of the town, including Colonel John Chandler, for their common usage. It appears that the permission to use this "common land" for the laying of highways was within the purview of the county court. See Peck v. Smith, supra, 1 Conn. 112. It further appears, in this instance, that the court gave the town permission to use the land in question, held in common by the proprietors of the town, in order that the town could lay a highway of necessity upon that land. The land was not individual property, but common property. As such, the town has successfully rebutted the presumption that the Rogers own the fee in this land. Because the Rogers have failed to offer any evidence to rebut the validity or meaning of this document, the court finds that the town has satisfied its burden of persuasion and, accordingly, finds that the town is the owner of the land. Specifically, in answer to the stipulated question, the town's discontinuance of the highway did not give the Rogers a property interest in that land.
The town argues that because it is the owner of the highway, it may properly seek an injunction prohibiting the Rogers' trespass and need not, under the facts of this case, demonstrate irreparable harm. The Rogers argue that "the Town has no title interest in the Highway whatsoever. Even if the court determined that the Town had some sort of interest in the Highway, common law has also given Rogers an interest in the Highway which would defeat any claim of Trespass as the Town lacks a right of exclusive possession." (Rogers' Brief, p. 9[4])
"A trespass on real estate is the doing of a direct injury to property by force." Lake Garda Improvement Assn. v. Battistoni, 160 Conn. 503,516, 280 A.2d 877 (1971). "The essentials of an action for trespass are: (1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury. Avery v. Spicer, 90 Conn. 576, 579, 98 A. 135 (1916); 75 Am.Jur 2d, Trespass §§ 3, 8, 14, 25, 35. The invasion, intrusion or entry must be physical. As stated at 75 Am.Jur.2d, Trespass § 35, "[b]ecause it is the right of the owner in possession to exclusive possession that is protected by an action for trespass, it is generally held that the intrusion of the property be physical and accomplished by a tangible matter. Thus, in order to be liable for trespass, one must CT Page 2016 intentionally cause some "substance" or thing to enter upon another's land. Abington Ltd. Partnership v. Talcott Mountain Science Center,43 Conn. Sup. 424, 427-28, 657 A.2d 732 (1994).
"One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally (a) enters land in the possession of the other, or causes a thing or a third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove." Restatement of Torts (Second) § 158. Further, "[a] trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there." Restatement (Second) Torts § 161.
Having concluded that the town owns the fee in the highway, an action in trespass does lie in this case where the Rogers have placed a barrier upon the town's land. There is no dispute that the town repeatedly requested that the Rogers remove this barrier, but the Rogers did not comply with the request. Accordingly, the elements of a trespass have been met and the court concludes as such.
The town argues that it is entitled to the requested relief that the Rogers be ordered to remove the barrier from the highway and be enjoined from further trespassing in this manner. The Rogers argue that they have a valid interest in at least half of this highway, and, accordingly, restitution and injunctive relief are improper.
A temporary injunction is interlocutory in character and is issued before the pleadings are closed and before all issues have been joined. See Cavalli v. McMahon, 174 Conn. 212, 215, 384 A.2d 374 (1978). After all of the issues are properly joined and the pleadings are closed, a permanent injunction may issue. See id.
"As a general rule an injunction will not be granted to prevent a threatened trespass. But where there is something particular in the case, so as to bring the injury under the head of quieting possession, or so as to make out a case of irreparable mischief, . . . an injunction may be awarded." Connecticut Light Power Co. v. Fleetwood, 124 Conn. 386,390-91, 200 A. 334 (1938). "Injunction is not a form of equitable relief designed to try title. It cannot be made the substitute for an action of trespass or ejectment. The adjudication upon the issue of the trespasses involves the issues of title and possession. When the trespasses complained of work irreparable injury injunction may lie; Lawton v.Herrick, 83 Conn. 417, 425, 76 A. 986 [(1910)]; Gorham v. New Haven,82 Conn. 153, 156, 157, 72 A. 1012 [(1909)]; and will lie provided the CT Page 2017 complainant's title is not in doubt or conflict and he has the actual possession." Raph v. Vogeler, 45 Conn. App. 56, 62, 695 A.2d 1066, cert. denied, 241 Conn. 920, 696 A.2d 342 (1997). Although, ordinarily, a plaintiff is entitled to an injunction only in the event that he can show that the threatened conduct will cause him irreparable damage, this is not so in cases of trespass upon land. See Wambeck v. Lovetri,141 Conn. 558, 564, 107 A.2d 395 (1954).
"`Injunction is available in a suitable case, and will ordinarily issue at the suit of a landowner to compel the removal of encroachments.' . . . Branch v. Occhionero, 239 Conn. 199, 206, 681 A.2d 306 (1996). A decision to grant or deny an injunction must be compatible with the equities in the case and `balance the injury complained of with that which will result from interference by injunction.' Moore v. Serafin,163 Conn. 1. 6, 301 A.2d 238 (1972)." Raph v. Vogeler, supra.45 Conn. App. 62.
The Rogers have placed a barrier across land owned by the town and have refused to remove the barrier as requested by the town. An injunction is properly issued to compel the removal of encroachment. See id. Accordingly, a permanent injunction, ordering the Rogers to remove all encroachments, erections and structures that they have placed on the town's land, may issue. See Lake Garda Improvement Assn. v. Battistoni, supra. 160 Conn. 518. The Rogers are ordered to restore the land to its original condition.
Kocay, J.