[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, William Abbott, a licensed contractor in Connecticut, brought this action to recover the balance of the amount due for work he perform for the defendant at her home. The defendant, Marcella F. Zullo interposed special defenses alleging that the work was not done in a workmanlike manner and counterclaimed that the plaintiff is liable to her for damages for structural problems arising from the unworkmanlike manner in which the plaintiff performed the work. The matter was tried to the court on diverse days in April and May, 1997.
The defendant alleges among other items that there was a chip in the new bathtub, there were holes in the kitchen cabinet doors, the kitchen floor was cracked because the tiles were laid CT Page 8065 on an uneven surface, the light switch openings were cut too large to be covered by switch plates, and the plaintiff failed to obtain the necessary permit from the town. More significantly, she alleges that the plaintiff removed a support beam or lolly column in the lower level which caused the first floor to sag and ceilings and walls to separate thereby destroying the structural integrity of the house. The plaintiff denies all allegations and specifically that he removed the lolly column.
The court finds the following facts. The parties entered into a contract on May 2, 1992. By the terms of this contract the plaintiff was to remodel the lower level of the home Zullo was purchasing for the purpose of providing an "in-law" apartment for Zullo's mother. Abbott was to "move existing partitions and relocate for new bath, kitchen and 2 bedrooms." (Exhibit A). In addition he was to frame, insulate, sheetrock, tape and paint walls and ceiling. The contract price, which was not to exceed $20,000, did not include floor covering and carpet. An allowance of $2500 was given for kitchen cabinets. Counter tops, vanity, medicine cabinet, special light fixtures and fans were also not included. An invoice for "extras" totalled $3282.73 and was signed by the defendant. (Exhibit B). On various dates before June 5 the defendant made payments to the plaintiff. However, she refused to pay the balance due of $8282.73.
The plaintiff began work on May 2, 1992 and worked with various subcontractors until he was asked to leave the property on June 5. The plaintiff, with their help, turned the furnace counterclockwise, put up sheetrock to wall off the furnace and to make a hallway, installed vinyl tiles in the kitchen, installed a bathtub, and installed kitchen cabinets among other tasks. He did not complete trim work around a window because he was asked to leave the premises before he could complete the work. He was told he would hear from the defendant's attorney. The value for the work left undone is $200.
The plaintiff is the brother-in-law of Robert Kresmery, Zullo's "significant other". (Testimony of Kresmery, May 15, 1997, p. 33) The contract was not more detailed than it was because the work was being done for a family member. Further, the defendant benefited from discounts provided Abbott as contractor which he passed on to Zullo in connection with the kitchen cabinets. (Testimony of Abbott, May 16, 1997, p. 15).
Zullo had purchased the home on April 27, 1992. She moved CT Page 8066 into it two weeks after Abbott started to convert the lower level of the raised ranch into an in-law apartment. Abbott did not apply for a building permit because Zullo told him that she or her father would obtain one. After the furnace was moved an inspector stopped by to review the work done and directed that certain additional work be performed. Abbott assumed that the inspector was there because a permit had been issued although he had never seen one nor drawn plans for a permit application.
In accordance with the defendant's instructions, the plaintiff continued the wall which ended at the then existing lolly column. The defendant contends that the plaintiff removed the lolly column during construction thus causing her house to sink. She introduced photographs of the area which were taken after construction was completed. Some were taken in March 1995 and others in October and November, 1995 three years after the work was performed. While they indeed show that a lolly column is missing, and while the plaintiff and his witnesses agree that a lolly column was indeed positioned in the space identified, the photographs do not carry great weight. The defendant's recollection of when the photographs were taken was not clear and the photographs were undated. The plaintiff as a licensed contractor, had no reason to remove the lolly column and enough knowledge to know that it could not be removed without other support being provided. His testimony as to the presence of the lolly column when he left the premises was credible.
The kitchen cabinets have minute holes which are pre-drilled by the manufacturer presumably for ease of installation. The kitchen cabinets were chosen by the defendant. The plaintiff did not exercise any discretion or control over the selection of the cabinets or the manner in which they arrived from the manufacturer. (Testimony of Abbott, May 16, 1997, p. 30-31,35-36).
The defendant failed to call an expert witness to testify as to the other items she claimed were done in an unworkmanlike manner. She submitted a cost estimate of items requiring repair dated March 31, 1994, nearly two years after the date of the work. (Exhibit 18). This did not help her meet her burden of proof and the court gave it little weight. The defendant did not provide sufficient evidence through an expert as to causation and as to how the cost estimates were determined. The inspection report dated April 25, 1994, submitted together with the application for building permit which was issued on December 12, CT Page 8067 1994 is too remote in time from the date of the work performed to lend much weight to the defendant's claims. (Exhibit 6.)
For the foregoing reasons the court finds that Zullo failed to provide the better or more credible evidence to meet her burden of proof on the major portion of her allegations in the special defenses and counterclaims.
In so concluding, the court found other factors relevant. The apartment was prepared for Zullo's mother. Zullo's mother did not like the position of the lolly column, a fact which the court found curious. Since Zullo's mother was not called as a witness there was no opportunity to learn of the degree of her dissatisfaction with the lolly column and whether or not she sought to have the situation remedied either by the plaintiff or others.
The court also noted the history of the case. The plaintiff brought this lawsuit on September 22, 1993 with a return date of October 19, 1993, more than one year after he performed the work the defendant considered unsatisfactory. The defendant counterclaimed on November 9, 1993. While there was some contact between the parties in the interim there was no resolution of their differences. The court cannot help but wonder why, if the defendant was so dissatisfied with the plaintiff's work and distressed with the deterioration of the structural integrity of her home, she herself did not initiate suit at an earlier date.
Except for the following items, the court finds the defendant did not meet her burden of proof. It is undisputed that there is a chip in the bathtub. The defendant demanded a new tub; the plaintiff refused because such a chip is common and is repaired by the manufacturer so that it is not noticeable. The defendant refused to permit the tub chip to be repaired. In the event there is an existing warranty on the bathtub to cover the repair of the chip the court directs that the plaintiff cooperate with the defendant in obtaining that repair, although he is not to make the repair himself or go to the defendant's home. In the event there is no warranty, the plaintiff is not obligated to take any further action.
The court finds that the plaintiff did not install the vinyl tiles properly. He placed them directly on a concrete floor which was not smoothly prepared thereby causing the vinyl tiles to crack because of the rough subsurface. The charge for that vinyl CT Page 8068 flooring for the kitchen and laundry room was $494.11. In addition he charged $250 for labor to remove carpet and old vinyl. (Exhibit B). These sums are in addition to the $200 needed to complete the window trim.
As to other items claimed by the defendant the court has considered them and rejected them finding that she failed to meet her burden of proof.
Judgment shall enter for the plaintiff on his complaint in the amount of $8282.73. Judgment shall enter for the defendant on her counterclaim in the amount of $944.11. Neither party is awarded attorney's fees as there is no statutory or contractual basis for such an award. Raph v. Vogeler, 45 Conn. App. 56, 65
(1997).
Leheny, J.