[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Zachary Sachs and Ruth Sachs, who reside at 25 Middlebrook Farm Road, Wilton, seek a temporary injunction ordering the defendants, David Henwood and Mary C. Henwood, 242 Ridgefield Road, Wilton, to remove a driveway running across the plaintiffs' property. The plaintiffs purchased their property, known as Lot 2 of a subdivision depicted on Map 3630, Wilton Land Records, in 1986. The defendants had purchased Lot 3, a vacant or unimproved lot in the same subdivision, in 1980. The defendants' personal residence at 242 Ridgefield Road is also adjacent to the plaintiffs' home, but is not involved in this proceeding.
The court held a hearing over the course of two days and found the following facts. The defendants have an express easement over the plaintiffs' property from Middlebrook Farm Road for "the purpose of ingress and egress to said Lot No. 3." The easement provides that the owner of Lot 3, now the defendants, has the right to enter upon Lot 2 "for the purpose of constructing said accessway, including the installation of culverts."
The former owner or common grantor of both Lots 2 and 3 in the subdivision, Solvang Builders, Inc., established this express easement for a driveway in favor of Lot 3 and burdening Lot 2. Lot 2 was first sold by the developer to the Faulkners and the deed to them set out the terms of the easement, which is 30 feet wide and approximately 290 feet long. The lot was then sold by the Faulkners to the plaintiffs and that deed referred explicitly to the easement contained in the deed from Solvang Builders, Inc. to the Faulkners, which is recorded in Book 341 at Page 278, Wilton Land Records. The conveyance of Lot 2 from the Faulkners to the plaintiffs was recorded in Book 541 at Page 270. The deed for Lot 3 sold by Solvang Builders, Inc. to the defendants was recorded in Book 357 at Page 55 and referred to the easement. ("The owners of Lot No. 3 shall have the right to enter upon so much of Lot No. 2 as is necessary for the purpose of constructing said accessway . . . for the purpose of ingress and egress to said Lot No. 3.) The driveway easement across the plaintiffs' CT Page 10897 property is the only access to Lot 3 because of wetlands problems.
The plaintiffs allege that in December, 1996, the defendants removed a section of a stone wall and a hickory tree, both of which belonged to the plaintiffs, located on either side of the beginning of the easement on Middlebrook Farm Road. This, according to the plaintiffs, was part of a plan to commence construction of a driveway across their property.
The plaintiffs also contend that the driveway was constructed by the defendants in retaliation for a complaint filed by the plaintiffs against the defendant, Mr. Henwood, which resulted in his arrest in October, 1997, for entering upon and removing surveyor's stakes from the plaintiffs' property.
In late January, 1998, the defendants engaged contractors who removed approximately 12 inches of topsoil from the accessway, filled it with stones and gravel, installed culverts, and constructed a driveway from Middlebrook Farm Road to the boundary line of Lot 3. The driveway, in other words, stops at a gate on that line and does not continue into the defendants' Lot 3.
The plaintiffs argue that the defendants have no intention of building a home on Lot 3 and therefore the driveway has no use or benefit to the defendants and was constructed by them only for improper motives. The plaintiffs characterize the construction of the driveway as an "excessive" and "impermissible" expansion or "intensification" of the defendants' rights under the easement across their property.
The plaintiffs further claim that the driveway was erected maliciously with an intent to annoy or injure them in violation of General Statutes §§ 52-570 and 52-480.[1] The plaintiffs ask the court to order the defendants to remove the driveway from the plaintiffs' property. Their position is summarized by Mrs. Sachs when she testified: "We can't understand why they would go and put in such a horribly awful looking driveway when they have no apparent reason for doing that other than what I feel is to be annoying about it and to be vengeful about it."
The criteria for the issuance of a temporary injunction under General Statutes § 52-471 et seq. has been set forth in a number of cases. The purpose of a temporary injunction is "to preserve the status quo until the rights of the parties can be determined after a full hearing on the merits;" Griffin HospitalCT Page 10898v. Commission on Hospitals Health Care, 196 Conn. 451, 457,493 A.2d 229 (1985). The applicant for a temporary injunction has the burden of showing "a reasonable degree of probability of success." Id. In addition, a court must "balance the results which may be caused to one party or the other." Id. "The need to show an irreparable loss unless the status quo is preserved has also been often mentioned." Id., 458. According to Branch v.Occhionero, 239 Conn. 199, 681 A.2d 306 (1996): "[a] party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." (Internal quotation marks omitted.) Id., 207; see also Raph v.Vogeler, 45 Conn. App. 56, 62-63, 695 A.2d 1066, cert. denied,241 Conn. 920, 696 A.2d 342 (1997).
A dissent in an Appellate Court decision summarized the criteria for the issuance of a temporary injunction as follows: "the plaintiff must establish that protectable interests are at stake, that it will prevail, to a reasonable certainty, subsequent to a final hearing on its application for permanent injunction, and also irreparable injury and lack of an adequate remedy at law. . . . The principal purpose of such an injunction is to preserve the status quo until the rights of the parties can be finally determined after a hearing on the merits. . . . In deciding whether it should be granted . . . the court is called upon to balance the results which may be caused to one party or the other, and if it appears that to deny . . . it may result in great harm to the plaintiff and little to the defendant, the court may well exercise its discretion in favor of granting . . . it, unless indeed, it is very clear that the plaintiff is without legal right. . . . The court must consider the probable outcome of the litigation, and whether an irreparable loss will result unless the status quo is preserved." (Citations omitted; internal quotation marks omitted.) Rhode Island Hospital Trust NationalBank v. Trust, 25 Conn. App. 28, 39-40, 592 A.2d 417 (1991) (Foti, J., dissenting).
This case involves a grant of an easement by deed. "For a determination of the character and extent of an easement created by deed we must look to the language of the deed, the situation of the property and the surrounding circumstances in order to ascertain the intention of the parties. . . . The language of the grant will be given its ordinary import in the absence of anything in the situation or surrounding circumstances which indicates a contrary intent. . . . The meaning and effect of the reservation are to be determined, not by the actual intent of the CT Page 10899 parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances. . . ." (Citations omitted; internal quotation marks omitted.) Lago v. Guerrette, 219 Conn. 262, 267-68,592 A.2d 939 (1991).
The facts recited previously lead the court to the following conclusions: (1) the "probable outcome" of this litigation will favor the defendants; (2) the plaintiffs will not suffer "irreparable loss" if a temporary injunction is not issued; and (3) in "balancing the harm" to the respective parties if a temporary injunction is issued, the defendants would suffer more harm.
First, regarding the outcome of the case, although a different result might well ensue after the parties engage in discovery and the plaintiffs are able to present their case for a permanent injunction at a full trial on the merits, at this preliminary stage of the proceedings, the court believes that the defendants presented a plausible argument that they have the right to construct a driveway in the easement they possess over the plaintiffs' land. Although the plaintiffs claim that the defendants have no intention of building a house upon Lot 3, the evidence indicates that the defendants applied for and obtained the approval of the Inland Wetlands Commission of Wilton to build a house on Lot 3 and a driveway permit from the local Department of Public Works. Moreover, although the easement is 30 feet wide, the defendants actually built the driveway 12 feet wide, the minimum width permitted by the town of Wilton. Moreover, there is no explicit requirement in the grant of the easement that a house must be under actual construction or that at least construction must be imminent before a driveway can be started.
As to the necessity of demonstrating irreparable harm and no adequate remedy at law, the plaintiffs will have a full opportunity at a hearing on the merits to present their claims under the two statutes regarding the malicious erection of a structure. However, their contention that the driveway is "horrible looking" and a "mess" because of the silt fences and the piles of dirt and stone do not constitute irreparable harm . . .
Finally, there would be more harm caused to the defendants if they were ordered to remove the newly installed driveway than that which the plaintiffs would suffer by waiting until a hearing on the merits of a permanent injunction can be scheduled. CT Page 10900 Ordering the defendants to remove the driveway at this point in the proceedings would enable the plaintiffs in this application for a temporary injunction to achieve the very result they seek from this lawsuit without having to prove their case in a full trial.
Hence, the plaintiffs' application for a temporary injunction is denied, except that if the defendants fail to remove voluntarily the four or five feet high piles of dirt and boulders that accumulated on either side of the excavation, including grading and seeding, and removing the silt fences, all in accord with the driveway permit obtained from the municipality, the defendants are ordered to perform such work expeditiously and at their own cost and expense, and the plaintiffs do not have to post a bond. General Statutes § 52-472.
So Ordered.
Dated at Stamford, Connecticut, this 25th day of September, 1998.
William B. Lewis, Judge