[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this matter two cases have been consolidated for trial. The first, docket number CV95 0357038, is a fifteen page, seven count complaint sounding in breach of a written lease, holdover rent beyond the terms of the lease and other damages arising from the lease against the defendants John Smith and Jonalen Construction Corporation. The court will deal with this case first. The operative complaint is dated February 6, 1998, and to that complaint the defendants, on March 31, 1998, filed their Answer, six special defenses to Counts one through 5, four special defenses to counts six and seven and a five count counterclaim.
The original lease, bearing no date, between the plaintiff Alfredo Anzalone and Jonalen Construction Corporation, purported to lease to the defendant the premises located at 146 Jetland Street in Bridgeport, also known as 2909-2911 Fairfield Avenue, for a term of five years from March 1, 1989 through February 28, 1994. That lease was for a parcel of land comprising 5,554 square feet with a small garage-type building thereon. That parcel was directly next door to premises on which the Black Rock Castle Restaurant operated. The defendants in this case had an interest in that restaurant's operation which will be described hereafter. CT Page 13146
The first year's lease was for $1500 monthly and a rider to the lease provided that on each subsequent March 1 of the lease the rent would increase by five percent (5%) payable in equal payments over the next twelve months. The rental, therefore, for the first year was $1500 monthly; the second year $1575 monthly, the third year $1622.25 monthly, the fourth year $1703.36 monthly, and the fifth year $1789.88 monthly. The lease further provided as additional rent that the tenant shall pay all taxes and/or municipal assessments due to the city of Bridgeport, again payable in twelve equal installments during the term of the lease. That payment of taxes amounted to $70.70 monthly during the term of the lease. The defendant John P. Smith, the principal in Jonalen, guaranteed the payment of the lease obligations.
Apparently, all payments were on schedule for the first two years, but the plaintiff claims that on or about March 1, 1991, the defendant began paying only a total of $1,645.70 each month until the end of its tenancy and for a three month holdover subsequent to its tenancy. That sum was the total of the mothly rental for the second year of the lease in the amount of $1,575 plus the taxes of $70.70 monthly. The plaintiff was very vague as to exactly when the rental payments became shorted while Mrs. Lena Smith on behalf of the tenant said it was March 1, 1992. The plaintiff's total claim for rental due is $14,485.90 broken down as follows: $4,688.88 for the period March 1, 1991 through February 28, 1994; $1996.743 for the months of March, April and May of 1994; and $7,800.28 for the period June 1, 1994 through September 8, 1994, when the defendant vacated the premises. The court does not disagree with the arithmetic provided by the plaintiff.
Counts One and Two present the plaintiff's claim for the unpaid rent of $4,688.88 from March 1, 1991 through February 28, 1994. Counts Three and Four present the plaintiff's claim for unpaid rent for the months of March, April, and May, 1994, in the amount of $1,996.74 and count 5 for the period thereafter. The defendants stopped paying any rent after May 31, 1994. The plaintiff then served a notice to quit, commenced a summary process action, obtained judgment and the defendant vacated the premises on September 4, 1994. It is of interest to note that in the complaint dated July 8, 1994, attached to the summary process summons (defendant's exhibit B) and another motion for use and occupancy dated July 24, 1994 (defendant's exhibit C) filed by the plaintiff against the defendants he alleges the latest agreed upon rental was $1,500 monthly.
The defendants have interposed six special defenses to the claims for rent set forth in counts one through five. The first special defense is that the plaintiff waived his right to any rental increase by accepting the rental payment proffered. The second special defense is in estoppel CT Page 13147 presumably based on the same ground. The third special defense is that the plaintiff has received payment in full. That simply has not been proven and the court so finds. The fourth special defense is that the garage on the premises suffered from numerous conditions of disrepair which prevented the defendant Jonalen from using it for the purposes intended. It further claims that the plaintiff's refusal to make repairs greatly diminished the value of the property to the defendant Jonalen. The fifth special defense mirrored the fourth and claimed the lack of repairs constituted a constructive eviction. The sixth special defense, again adopting the factual allegations of the fourth and fifth special defenses, claims this action caused a breach of the implied covenant of quite enjoyment and relieved the defendants of the obligation to pay rent.
The court will first deal with the question of rent. Mr. Smith, the principal of Jonalen, testified that the purposes for leasing the plaintiff's property were threefold: (1) to provide a cabinet/woodworking facility for customers of his company; (2) to provide a storage area for equipment used in the adjoining restaurant; and, (3) to provide some additional parking space for the restaurant, all of which he communicated to the plaintiff. He further claims that the condition of the garage deteriorated over the leasehold making it impossible to make full use of the building. He claims that the building lacked a functioning heating system although there apparently was a gas heater on the premises that was not hooked up. His major complaint was a severely leaking roof which in the winter caused an inch or more of ice to form on the floor making it impossible to make use of the premises and which ice condition caused the toilet and sink on the premises to crack, break and to be unusable.
The defendant Smith further claims that the plaintiff, prior to signing the lease, orally agreed to install a three phase electrical panel so that he could run his carpentry equipment. The plaintiff denies having made any such promise and it obviously does not exist in the lease.
What becomes painfully clear from hearing the parties testify in this case is that at the beginning they got along reasonably well. There were, as there often is, problems with the leased premises and who should or should not repair or remedy the problems. Apparently the lease was silent as to repairs. The general rule is that structural repairs to the outside of the building are the responsibility of the landlord, and the court here finds that the leaking roof and the resultant water and ice within the building on the premises were the responsibility of the plaintiff. There were many discussions between the parties about this and some in writing concerning the condition of the premises. The court finds it more credible that the defendants advised the plaintiff that they were not going to pay the additional rent increase of five percent a year as CT Page 13148 long as the premises remained in their present state of disrepair. Apparently, the plaintiff did not complain more than once although he claims he never agreed to the lower payment.
What is clear is that the plaintiff did not refuse the payment of $1,645 monthly for the next three years and in fact cashed the checks; he did not get a lawyer; he did not threaten or initiate summary process; and more significantly, he did not do anything to remedy the problems with the premises. Even after the end of the lease on February 28, 1994, he accepted the rental payments of $1,645 for March, April, and May without making any claim for additional rent provided for in the lease.
It was only when the defendants failed to pay the June, 1994 rent that things took a substantial turn for the worse. The plaintiff hired a lawyer, began an eviction action, and began his quest to examine the property line and possible building encroachment which forms the basis for the second case.
The court finds that the plaintiff's conduct from March 1, 1991, through May 30, 1994, in accepting the rental payments of $1,645 constitutes a waiver of the terms of the lease with respect to rental payments. Waiver is the intentional relinquishment of a known right.Soares v. Max Service, Inc., 42 Conn. App. 147, 175 (1996)
 Waiver need not be express, but may consist of acts or conduct from which a waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so.
Wadia Enterprises, Inc. v. Hirschfeld, 224 Conn. 240, 252 (1992)
Here because of the continuing problems with the deteriorating conditions of the premises caused by water and ice in the building, the long course over which the plaintiff accepted the lower rental payment including the holdover period beginning March, 1994, the fact that he never threatened or in fact brought an eviction proceeding until June of 1994, and the evidentiary admissions contained in those pleadings that the latest rental payment was only $1,500, and the reasonable inference that may be drawn from these facts, the court finds a waiver of the specific term of the lease increasing the rental each year by five percent.
The court, therefore, based on the first special defense sounding in waiver as to Counts One through Four of the complaint finds the issues for the defendants and finds that the plaintiff is entitled to no additional rent for the period March 1, 1991, through May 31, 1994. CT Page 13149
As to Count Five, which is the claim for rent for the four months of June through September, 1994, the court finds for the plaintiff in the amount of $5,375.78 based on a monthly rental of $1,645 through September 8, 1994.
As to the claim by the defendant John Smith that he is not bound by his guarantee for the period June 1, 1994, through September 8, 1994. the court disagrees. Any fair reading of the guarantee obligates the defendant Smith individually for the holdover period of the lease. The judgment on the Fifth Count is therefore as to both defendants Jonalen Construction and John Smith.
As for the amount of the judgment as to Count Five, the court finds the fair value for the use and occupancy for June, July and August to be $1,645.70 monthly. That is what the defendants had been paying since 1992 and there is no reason to change it. The court has calculated use and occupancy for the eight days in September at $438.68, which is eight days at the monthly rate of $1,645.70. Once a tenancy is terminated by service of a notice to quit, use and occupancy and not rent is due from the occupant of the rented premises. Use and occupancy may be charged only for those days the premises are actually occupied. (See Section III B.1 Citizen's Adversary Council's update of the 1993 book, Small Claims Issues for Magistrates Hearing Cases.
As to Counts Six and Seven of the complaint, the plaintiff alleges that the defendants are in breach of paragraph 35 of the lease, all as is fully set forth in paragraph 6A-E of the sixth count and paragraph 8 A-E of the seventh count generally alleging damages caused to the premises by the defendant. The court finds, with one exception, that the plaintiff has failed in its burden of proof as to causation or damages as to any one of the enumerated claims and judgment will enter for the defendants on those counts. The loss of the toilet and sink, the largest items claimed; was clearly caused by the plaintiff.
As to the claim stated in paragraph 6B of the Sixth Count and 8B of the Seventh Count, the court finds for the plaintiff and orders the defendants to remove the concrete ramp.
As to the five counterclaims which in many ways mirror the special defenses with the exception of the CUTPA claim, the defendants have not sustained their burden of proof, have offered no evidence as to damages, and judgment shall, therefore, be entered in favor of the plaintiff.
The second case will be designated the encroachment case. This action, docket number CV95 0321689, was instituted on the regular docket of the CT Page 13150 Superior Court against the defendants, John Smith, Anne Lena Smith, Jonalen Construction Corporation, Thomas C. C. Sargent, Trustee, and Thomas Febbraio seeking an injunction for the removal of a wall and ramp that was constructed or caused to be constructed by the defendants Anne Lena Smith, John Smith and Jonalen Construction Corporation for the benefit of real property located at 2895 Fairfield Avenue, Bridgeport, Connecticut, and owned by Thomas C. C. Sargent, Trustee, and Thomas Febbraio and that encroaches upon real property owned by the plaintiff at 146 Jetland Street, Bridgeport, Connecticut. In April, 2000, the plaintiff moved to cite in two additional parties, Glenshane, LLC and Leitrim Enterprises, Ltd. d/b/a Black Rock Castle, as defendants because during the time when this suit was pending, Glenshane, LLC became the owner of the abutting real property at 2895 Fairfield Avenue and Leitrim Enterprises, Ltd., d/b/a Black Rock Castle became the lessee of this property. The court, Rush, J., granted the motion to cite in on May 23, 2000. The Amended Complaint dated June 13, 2000, was served upon Glenshane, LLC and Leitrim Enterprises, Ltd. d/b/a Black Rock Castle on June 15, 2000. The June 13, 2000, Amended Complaint removed any allegations against Thomas C. C. Sargent, Trustee and Febbraio as they no longer had any interest in this action. Count One of the plaintiff's Amended Complaint is directed against Anne Lena Smith (hereafter "Ms. Smith")
The plaintiff's complaint is in seven counts. Counts One, Three, Five and Seven sound in trespass against the defendants Anne Lena Smith, Jonalen Construction Corporation, John Smith and Leitrim Enterprises, Ltd. d/b/a Black Rock Castle Restaurant, respectively, for the construction of a wall, ramp and temporary canopy enclosure (also referred to as the temporary tent canopy) that encroach upon the plaintiff's properties at 114 and 146 Jetland Street, which abut 2895 Fairfield Avenue. Counts Two and Four sound in negligence against the defendants Anne Lena Smith and Jonalen Construction Company, respectively, for causing to be constructed and/or constructing a wall, ramp and temporary canopy enclosure (also referred to as the temporary tent canopy) that encroach upon the plaintiff's properties at 114 and 146 Jetland Street, which abut 2895 Fairfield Avenue. Count Six is against the defendant Glenshane, LLC and seeks quiet title in the plaintiff for the property upon which the wall, ramp and temporary canopy enclosure encroach upon the plaintiff's property. Giving the plaintiff the benefit of the doubt and accepting the calculations of his surveyor, the wall built by the defendants along the rear of the property encroached upon the plaintiff's property at one end by 7.68 inches and at the other end 11.4 inches for a total of 22.28 square feet out of a total of 5,564 square feet for 146 Jetland Street.
On August 11, 2000, the defendants filed their Answer, Special Defenses CT Page 13151 and Counterclaims to the plaintiff's Amended Complaint. In its answer, the defendants deny the material allegations of the plaintiff's Amended Complaint. In addition, the defendants list five special defenses and a counterclaim. In their First and Second Special Defenses, the defendants assert claims of waiver and estoppel. In their Third Special Defense, the defendants claim that injunctive relief is not warranted because the encroachment is de minis. In their Fourth Special Defense, the defendants claim that Anne Lena Smith and John Smith are not personally liable to the plaintiff because they were acting within their corporate capacity. In their Fifth Special Defense, the defendants assert a claim that plaintiff is equitably estopped by his acquiescence that a fence marked the boundary line. Finally, the defendant Glenshane LLC alleges in its counterclaim a claim of ownership of that portion of the plaintiff's property upon which the wall rests by adverse possession. On August 8, 2001, the plaintiff filed its reply denying the allegations in the defendants' special defenses and counterclaim.
As can be seen from the pleadings in both cases, these rather simple cases for unpaid rent and trespass have been lawyered to death. At the conclusion of a two day trial, the court appealed to counsel to limit the size of their post trial briefs. In response, the plaintiff's attorney filed a brief of 102 pages and the defendants a brief of 42 pages plus an attached 76 pages of legal precedent.
The issue concerning the trespass or encroachment is relatively simple. First, both parties agree that the wall the defendants erected in 1991 or 1992 does in fact encroach on the plaintiff's property at 146 Jetland Street. By virtue of the plaintiff's survey, the encroachment totals 22.28 square feet along the entire line. Based on the defendant's survey, the total encroachment was closer to 17 square feet. That is out of a total of 5,554 square feet for 146 Jetland Street or about four-tenths (.4) of one percent of the parcel. That is what this case is about. For purposes of simplicity, the court will refer to the five defendants as the defendants except when it is necessary to differentiate.
Let us attempt to simplify the fact pattern. The defendants John Smith and Anne Lena Smith became interested in the premises at 2895 Fairfield Avenue for purposes of opening a restaurant some time in 1988. The premises had been a restaurant from at least 1956 known as the Colony Restaurant operated by Walter Ray Meachem who went out of business on April 13, 1988. The Smiths then leased the premises, drew up plans for and completely remodeled the existing building. As a part of the remodeling, they constructed an open patio to the rear of the existing building. Anne Smith basically ran the restaurant and John Smith, as president of Jonalen Construction, Inc., did all the renovations and additions CT Page 13152 although he also had an interest in the restaurant. The restaurant opened in late 1988 under the name of Black Rock Castle.
As you face the restaurant property from Fairfield Avenue, there is one property to the right between it and the corner of Fairfield Avenue and Jetland Street. That property known as 146 Jetland Street is owned by the plaintiff and has been so owned since 1977. Originally, there was a house on the property facing Fairfield Avenue which was removed in the early eighties. In 1988, there was a three car garage at the rear of the property away from Fairfield Avenue. This is the property that John Smith and Jonalen leased from the plaintiff on March 1, 1989, which was the subject of the first case.
To the rear of 146 Jetland and to the rear of the restaurant property, the plaintiff owned another parcel known as 114 Jetland Street upon which he ran a 14 bay automobile repair shop. He was on these premises daily during all events described in this case.
Alongside of the restaurant property adjoining 146 Jetland Street was a sidewalk the length of the existing building plus another three feet which everyone assumed was on the restaurant property and which had been there since at least 1956. The sidewalk was about three feet from the side of the restaurant building. From the rear of the restaurant building to where it reached the plaintiff's building at 114 Jetland Street was a dilapidated metal fence about 3.6 feet high anchored on both sides by concrete posts. That fence was about three feet from the edge of and parallel to the existing restaurant building. Both John Smith and Ray Meachem testified that by usage and the fact that no one from 146 Jetland Street invaded that fence, they believed the fence was on the restaurant property and was in fact the property line.
The plaintiff testified that in 1977 he had had the building line shown to him by the realtor in words and by hand, but it is unclear to the court exactly where that was from his testimony. The realtor did not testify. The plaintiff at the time of his acquisition of these parcels did not have them surveyed. It is abundantly clear to the court that neither John Smith, Ray Meachem, or the plaintiff had a clue as to the exact location of the property line between 2895 Fairfield Avenue and 146 Jetland Street from the rear of the restaurant building to its intersection with 114 Jetland Street until the two surveys were prepared in 1995.
The next major development with the property took place in 1991 and 1992. As of this time, John Smith and Jonalen Construction had become the plaintiff's tenants at 146 Jetland Street. As of this time, the defendants had received from the zoning authorities in Bridgeport a waiver of CT Page 13153 sideline setback requirements to build to the property line. In 1991 and 1992, the defendants filed applications to enclose the rear open patio and add an addition for kitchen enlargement to the rear of the existing restaurant, which addition wall between 2895 Fairfield Avenue and 146 Jetland Street was three feet closer to the property line than the existing building. Those applications were approved and the construction completed.
Mr. Smith testified that in preparing his applications and plot plans he used existing zoning maps from the City of Bridgeport and in building the wall between 146 Jetland Street and 2895 Fairfield Avenues he followed the line of the wire fence and concrete posts that had pre-existed and which he believed constituted the property line. He believed that the angles on the Bridgeport maps were all at 90 degrees and that the new wall, which extended three feet out from the wall of the existing building, was parallel to the existing building and therefore with the defendant's boundary. Unfortunately, they were off by so little.
What is of interest is that all during the planning and building of this wall the plaintiff was on the premises every day, spoke with John Smith often and even provided some material used in the construction. At no time did the plaintiff as much as whisper that the wall was on his property. He obviously did not know and they did not know.
What becomes clear to the court is what lies between the lines in this case. As long as Smith and Jonalen paid the rent for 146 Jetland, the plaintiff had no problem. Even after the end of the lease and during the holdover period when the defendants continued to pay rent, he had no problem. As soon as they failed to pay the June, 1994 rent, the circumstances radically changed. The plaintiff initiated an eviction proceeding and then obtained a survey which showed an infinitesimally small encroachment, and he then initiated these two lawsuits.
With that simple recitation of facts, the court will now deal with the specific allegations of the numerous pleadings, and will begin with Counts Two and Four. Counts Two and Four respectively against Anne Lena Smith and Jonalen Construction Corporation allege negligence against these defendants basically for not ascertaining the metes and bounds of their property and not having a survey prepared before commencing the addition in 1991. It is of interest to note that although the plaintiff claims negligence on the part of the defendants for these failings, it is equally clear from his own testimony that he did not know the metes and bounds of his own adjoining property and never obtained a survey of his own property from 1977 until 1994 when he obtained one. CT Page 13154
I am not going to set forth all the legal principles of negligence because they are commonly known and understood. The court finds that there was no negligence established in this case by the proper legal standard. First, there was no requirement for a survey by the Bridgeport zoning regulations or authorities that approved this construction. Secondly and more importantly, these defendants utilized a fence line that had been in existence since 1956, and which was never contested or violated, in building the so-called offending wall in this case. At all times, the plaintiff was well aware of the project and never complained. It is obvious that he accepted the fence as the boundary line. While this may or may not amount to a waiver, it clearly indicates that these defendants were no more negligent than was the plaintiff and the court finds neither was negligent. Judgment shall enter for the defendants as to those counts.
As to Counts One, Three, Five and Seven, respectively, against Anne Lena Smith, Jonalen Construction Corporation, John Smith and Leitrim Enterprises, Ltd., d/b/a Black Rock Castle, they each allege a trespass in the erection of the temporary canopy roof and wall that encroaches on the plaintiff's property and further allege that the trespass has caused serious, substantial and irreparable harm to the plaintiff. Before discussing those claims, the court must first deal with the counterclaim of Leitrim Enterprises alleging it acquired title to the encroachment by adverse possession.
Again, I am not going to repeat all the legal principles and cases on that subject contained in the parties' briefs. The problem with that claim is that no one prior to the plaintiff's survey in 1994 ever knew where the true boundary line was in 1991 and 1992. Although there was testimony as to a dilapidated metal fence evidencing the property line, the court cannot conclude specifically where that fence was other than from Mr. Smith's testimony that he built the wall on that line. Because of the deminimus size of the encroachment, it becomes more difficult to demonstrate that the possession was open, visible, adverse and exclusive. Judgment shall enter for the plaintiff on the counterclaim based on a lack of proof in accordance with the applicable standard in an adverse possession case.
The court has reviewed the five special defenses as they relate to Counts One, Three, Five and Seven and finds none of them to have been proven.
That takes us back to the four counts sounding in trespass and the court will deal first with the allegation of damages because that will affect the remedy. The trespass has been admitted. The plaintiff has described his injury as serious, substantial and irreparable. In his CT Page 13155 brief he somehow assumes he has proven that. Nothing could be further from the truth. He has offered no evidence to support any level of damages, let alone serious, substantial and irreparable.
The trespass in this case was minuscule, .4 of one percent of the whole parcel. It did not render 146 Jetland Street nonconforming. The plaintiff was able to rent the premises after the termination of the Jonalen lease with no problem. The plaintiff has offered no evidence whatsoever that he has been unable to lease 146 Jetland Street or has lost any rental income resulting from this minimal encroachment.
The plaintiff further alleges that somehow this encroachment caused him the loss of the ability to market his property. Again, he has offered no evidence to support that claim. He has never advertised the property, listed it with a broker, put up a sign, or done anything on his own to market 146 Jetland Street. In fact, he testified he had no intention to sell the property and he, in fact, has not. He offered some vague testimony that an individual offered him $180,000 for the property but lost interest when he heard of the encroachment. That is not quite accurate. This person may have offered that figure, but at a time after the defendants' building was finished and the so-called encroachment was visible and open. It did not prevent or discourage an offer. To the extent that the offer was serious, it is more reasonable to conclude that the prospect lost interest not because of the encroachment, but because of the lawsuit. The plaintiff has woefully failed to demonstrate that the harm he suffered was either serious, substantial or irreparable.
In fact, the plaintiff has totally failed to establish any level of financial harm. He presented no witness on the question of damages. Were it not for the defendants' evidence, there would be no evidence of damages at all. However, in defendants' exhibit E, an appraisal of 146 Jetland Street by Steven A. Stoliman, performed at the defendants' request, he placed a value of the encroachment at $2,000. That is the only evidence of damages.
The plaintiff is obviously seeking from this court an injunction requiring the removal of the wall, and canopy attached to it, back the six to nine inches that it intrudes. That could be accomplished according to Mr. Smith at a cost of $40,000, which would also require shutting down the whole back section of the restaurant for several weeks. Anne Lena Smith testified that 60% of the gross revenue for the restaurant is generated from this section, which would require that she lay off personnel, and it would seriously impact on her ability to make her mortgage payments.
Both sides have heavily briefed this issue of relief. Courts of equity CT Page 13156 have inherent authority to grant injunctive relief to protect property rights where necessary and where no adequate remedy at law is available.VanTassell v. Spring Perch Co., 113 Conn. 636, 646 (1931). If a party's wrongful actions pose a threat to some unique property interest, so that the injury will be irreparable and damages will not compensate for the loss of property, the court will feel free to issue an injunction inasmuch as there is no adequate legal remedy. 11 Wright-Miller Federal Pretrial Procedure Sect. 2944 at 399, Ralph v. Vogeler, 45 Conn. App. 56,64 (1997)
However, a decision to grant or deny an injunction must be compatible with the equities in the case and balance the injury complained of with that which will result from interference by injunction. Moore v.Serafin, 163 Conn. 1, 6 (1972)
In the case of Bauby v. Krasnow, 107 Conn. 109, 115 (1927), the court observed:
 "Where, however, there has been an innocent mistake or a bonafide claim of right on the part of the defendant or laches on the part of the plaintiff or where the conduct of the defendant was not wilful and inexcusable, and where the granting of the injunction would cause damage to the plaintiff greatly disproportionate to the injury to which the plaintiff complains and it appears that damages will adequately compensate the latter, in such cases it has been held that it would be inequitable to grant a mandatory injunction and the plaintiff has been remitted to his remedy by way of damages."
Also see, Nixon v. Harper, 8 Conn. Sup. 8 (1940)
The facts in this case fit squarely within the holding in Bauby. Here the defendant's conduct was innocent and under a bonafide claim of right in building the wall along a fence line that had existed since 1956 and with no complaint. or warning or objection from the plaintiff, who knew exactly what was going on and was on the property daily. The plaintiff has offered no evidence as to non marketability or damages resulting from the encrouchment and the only evidence the court has on this subject comes from the defendant's appraisal establishing the damage at $2,000. Contrast this with a cost to remove the wall of $40,000, six to eight weeks of closing off an area that generates sixty percent of the defendant's gross causing employee layoffs and problems with paying a mortgage, and one can only conclude that injunctive relief is not warranted in this case. CT Page 13157
The court finds that damages will sufficiently compensate the plaintiff, and he is awarded judgment in the amount of $2,000 on Counts One, Three, Five and Seven. Obviously, he is only awarded one sum of $2,000 to be paid by the defendants in whatever way they choose.
As to Count Six against Glenshane, LLC, based on all the facts of this case, the plaintiff seeks to quiet title in his name to the portion of his property on which the defendant's improvements encroach upon his property. Based on the foregoing and because of the fact that the court has awarded the plaintiff $2,000 for the taking of the property in question, the court quiets title in the name of the defendant Glenshane, LLC, and the plaintiff is ordered to prepare and execute a deed to that defendant of the encroachment as shown on Mr. Bombero's survey (plaintiff's exhibit 1)
One final matter needs to be addressed. The plaintiff also complains that at the back of the defendant's patio and roof where its roof shingles come in contact with the plaintiff's building at 114 Jetland Street, that those shingles also constitute a trespass. Mr. Smith testified that he did that so rain water would not accumulate in the small area between the defendant's patio and the plaintiff's building. It would appear that this could only benefit the plaintiff, but if he in fact wants them removed, the defendants are ordered to remedy the situation so that the defendant's shingles do not touch or encroach on the plaintiff's property.
GORMLEY, J.